# CARLTON COUNTY FARMERS MUTUAL FIRE INSUR-ANCE COMPANY and Another v. FOLEY BROTHERS and Others.[1]

February 2, 1912.

Nos. 17,376—(204).

**Fire — liability for act of independent contractor.**

Where the owner or occupant of lands causes or permits fire to be set thereon to accomplish a desired result under such conditions that the act of then setting such fire necessarily endangers the property of others unless proper precautions are taken, a duty arises to take such precaution, which cannot be avoided by delegating the work to an independent contractor.

**Same — charge to jury.**

Held, that the agreement between a railway company and others in this case for constructing a railway is not of a character to require, in so far as it relates to the setting and escape of the fire which resulted in the destruction of plaintiffs' property, an instruction to the jury that the relation of independent contractor existed between any of the persons doing the work upon such construction.

**Same — misconduct of counsel.**

No prejudicial errors appear in the instructions given, the refusal to give requests, or upon the rulings at the trial. Nor does it appear that the improper remarks of counsel, which the jury was fully admonished to disregard, resulted in prejudice to defendants.

Action in the district court for Carlton county by plaintiff insurance company and Samuel B. Smith against Foley Brothers, Foley Brothers, Larson & Co. and Minneapolis, St. Paul & Sault Ste. Marie Railway Co., to have plaintiff company subrogated to the rights of plaintiff Smith to the extent of $3,200, the amount paid to him by plaintiff under its insurance policy; that plaintiff company have judgment against defendants for that sum and interest, and that plaintiff Smith have judgment for $11,463.

[1] Reported in 134 N. W. 309.

[Note] Liability of employer for acts of an independent contractor in setting out fire, see note in 17 L.R.A. (N.S.) 788.

The complaint alleged that certain personal and real property of plaintiff Smith was destroyed by fire; that plaintiff company adjusted the loss thereon with said Smith and paid him a sum aggregating $3,200; that defendants trespassed on the land and in clearing a right of way for defendant railway company across the land piled logs, trees, brush and stumps in numerous piles for the purpose of burning the piles in order to prepare the right of way for grading; that a prolonged drought had existed in the vicinity and the piles, trees, brush, grass, leaves and vegetable mould were unusually dry and in a highly inflammable condition so that a fire could not be kindled without great danger of loss and damage to forest trees and other property; that these conditions were well known to defendants; that notwithstanding these conditions defendants negligently kindled fires in said piles and left such fires unguarded, whereby the fires spread into the forest land and destroyed the trees and wood thereon, and subsequently spread to and burned the property of defendant Smith; that said season of drought was one of high winds; that in view of the prolonged drought and high winds defendants should not have set fires and should not have left them unguarded after they had set them.

The defendants Foley in their separate answer denied that they ever kindled any fires at any time, and expressly denied that they ever left any fires unguarded or trespassed upon any land, and denied that they caused plaintiffs or either of them any loss.

The amended answer of defendant railway company admitted entering into an agreement with defendants Foley for the construction of a new line of railway and alleged that the Foleys sublet the whole or portions of the work to subcontractors; that the work was exclusively performed by defendants Foley and their subcontractors, and the answering defendant did not use or exercise any control over the work of construction. It also alleged that defendants Foley and their subcontractors agreed to indemnify and save the answering defendant harmless for all claims for damage to the property of others by reason of said work, or any negligence on the part of defendants Foley and their subcontractors and laborers.

The amended reply to the amended answer of the railway company alleged that the subletting mentioned in the answer was subject to the approval and control of the defendant railway company, was also subject to the terms of the agreement between the railway company and its contractor which vested complete supervision and control as to the time, place, method and manner of performing the work in the defendant railway company, and that defendant exercised the rights so reserved to it, and that agreement provided that the subcontractor should be regarded as the foreman of the contractor; that so far as the contract and subcontracts affected the rights of plaintiffs the same were illegal.

The amended reply to the answer of defendants Foley alleged that, if defendants Foley sublet any portion of the work mentioned, any such subcontractors were the servants, agents and foremen of such contractor and required such subcontractors to perform the work in accordance with the contract and specifications between defendant railway company and defendants Foley; that the contractor retained the right of supervision and control of the work of such subcontractors and gave its bond of indemnity to defendant railway company to indemnify it against loss or damage by reason of the work performed under the contract; that so far as the performance of the work affected the rights and interests of plaintiffs it was illegal.

The case was tried before Dibell, J., and a jury which returned a verdict in favor of plaintiffs and against Foley Brothers, Larson & Company and the railway company for $6,255.90; of which sum $3,707.20 was awarded to plaintiff insurance company and $2,548.70 to plaintiff Smith. From an order denying defendants' motion for a new trial, they appealed. Affirmed.

*Harris Richardson* and *Harold C. Kerr,* for appellants.

*H. S. Lord,* for respondents.

HOLT, J.

Plaintiffs had a verdict against the defendants on the ground that through their negligence property belonging to one of plaintiffs and

part thereof insured by the other had been destroyed by fire. From an order denying a new trial the defendants appeal.

These facts appear: Plaintiff Smith, in September, 1908, was in possession of section 17, township 47 north, range 16 west, Carlton county, Minnesota, claiming to be owner thereof. Certain buildings and personal property were on the land, and were destroyed by a fire on September 3, 1908. The other plaintiff, an insurance company, paid the loss to Smith on certain property covered by its policy, and asked to be subrogated to Smith's right to the extent of the loss so paid, namely, $3,200.

The defendant railway company was then building a line of railway from Brooten to Duluth, and had started the undertaking the year previous. This line or right of way taken by the railway company ran about one-quarter of a mile south of plaintiff Smith's land. A written contract for clearing, grading, and constructing the roadbed was entered into between the railway company and the other defendant, dated March 7, 1907. On October 14, 1907, the defendant Foley Brothers, Larson & Co. sublet a part of the work, being the locality involved in this action, by a written agreement in which the contract with the railway company was incorporated as a part, to one J. E. Edwards. It is inferred that Edwards gave the clearing of the right of way to J. K. Olson, and the latter's foreman, John Tischart, on September 1, in clearing the right of way set the fire which plaintiff Smith claims escaped, through the defendant's negligence, and destroyed the property.

The theory upon which the learned trial court submitted the case to the jury is clearly and tersely stated in the charge in these words: "If you find from the evidence that the defendants caused the right of way, including that portion of it passing through Kadel's land, to be burned about the first of September, 1908, that the fire spread and burned Smith's property, that at the time the material along the right of way was exceedingly inflammable; that the burning at the time and under the conditions then prevailing was in itself inher-

ently and intrinsically and necessarily dangerous and was likely to result in injury to nearby property of others, that such was a natural and probable consequence under the existing conditions; that the defendants knew all this, that the conditions then prevailing and the natural and probable consequence of the burning of the right of way at the time were such as to cast upon the defendants the duty, if the right of way was to be burned then, of seeing to it that precautions were taken to prevent a fire spreading and injuring nearby premises, and that, nevertheless, without exercising any precautions to avoid doing injury to the premises of others, and without seeing to it that those directly concerned in the burning exercised care, the defendants caused the work on the Olson contract to be resumed, and the burning to be done, and Jack Tischart negligently started and cared for the fire, and because of his negligence it destroyed Smith's property, then there should be a verdict for the plaintiffs; otherwise, there should not be."

The motion for a new trial occupies twenty-four pages in the paper book, and the forty-eight assignments of error, with subdivisions, are of such length that it is not expedient to set them out in full or consider them separately in this opinion. The merits of the case may, however, be considered upon these propositions:

(1) Were the defendants entitled to direction of a verdict in their favor on the proposition that Foley Brothers, Larson & Co. were independent contractors, or that so were J. E. Edwards and J. K. Olson?

(2) If any responsibility attaches to defendants from the acts of Tischart, is there any evidence showing that the fire set by him escaped to and destroyed plaintiff Smith's property?

(3) Did the court err in instructing the jury or refusing to give requests asked by defendants?

(4) Are there erroneous rulings upon reception or rejection of evidence? And

(5) Was there misconduct of the plaintiffs' counsel, entitling defendants to a new trial?

Two objections which do not go to the merits of the controversy

should be first noticed. The defendants claim that plaintiffs have no ground to stand on because (a) Smith did not prove title in himself to the land, and (b) the railway company had no title to the location where the fire was started, and when it did get title afterwards to a right of way it was moved south of the first-mentioned location.

Possession of real estate is prima facie evidence of ownership. See cases cited in Stevens v. Town of Sandnes, 108 Minn. 271, 121 N. W. 902. It is not apparent wherein the defendants would be placed in a more favorable position to plaintiffs' demands if it were assumed that their occupancy of the strip of land from which the fire escaped to the property of plaintiff Smith was wrongful. The facts shown in the evidence indicate clearly that early in the year 1908 the defendant railway company and its servants and contractors had taken possession and occupied, for the purpose of constructing a railway thereon, a strip of ground one hundred feet in width through the northeast quarter of section 19, owned by one Kadel, being the section immediately south of plaintiff Smith's land. Between the date of the fire and the delivery of a deed from Kadel to the railway company, the location of the railway line was changed by straightening a curve, so that the part which had been first cleared, and upon which the fires were set which escaped to plaintiff Smith's property, was left a little north of the present right of way. The taking of possession and occupancy of the so-called right of way over Kadel's land in the first instance by the defendants should be presumed to have been rightful, and that it was with the consent or acquiescence of those who had any lawful right to object.

The defendants having had possession and exercised dominion over the strip from which a fire escaped and destroyed the property of plaintiff Smith, as found by the jury, did they, under the circumstances of this case, owe any duty in regard to the setting and caring for such fire?

Great calamities have come upon this state through prairie and forest fires, and, to avert the damage and injury which may result to individuals and communities from careless setting of fires or negligence in permitting fire to escape from premises of an own-

er or occupant, several enactments now on the statutes fix penalties. While such statutes have no bearing here, because the trial court instructed the jury, at defendants' request, that the action was not based on any statute, it is an indication that under certain circumstances care is required in handling an element which, though indispensable and beneficent in its proper use, so often becomes fearfully destructive to life and property when it gets beyond control. And it would seem that one in the ownership or control of lands may not, without regard to the danger he thereby exposes the property of others to, contract for the destruction by fire on his own premises of waste or materials not wanted. If he selects a time for doing such work when the conditions are such that the property of others is necessarily exposed to destruction, unless special precautions are taken to prevent it, he must be held negligent if he fails to exercise proper care in the premises.

The principle announced by the trial court in the charge above quoted is but another expression of the maxim "Sic utere tuo ut alienum non lædas," and has support in the following cases: Black v. Christchurch [1894] A. C. 48: "The lighting of a fire on open bush land, where it may readily spread to adjoining property and cause serious damage, is an operation necessarily attended with great danger, and a proprietor who executes such an operation is bound to use all reasonable precautions to prevent the fire extending to his neighbor's property. 'Sic utere tuo ut alienum non lædas.' And if he authorizes another to act for him he is bound, not only to stipulate that such precautions shall be taken, but also to see that these are observed, otherwise, he will be responsible for the consequences." St. Louis v. Madden, 77 Kan. 80, 93 Pac. 586, 17 L.R.A.(N.S.) 788; St. Louis v. Yonley, 53 Ark. 503, 14 S. W. 800, 9 L.R.A. 604; Cameron v. Oberlin, 19 Ind. App. 142, 48 N. E. 386.

It is nothing but good common sense that an owner should not be permitted to escape liability for the consequences of an undertaking on his own premises which, in its execution, is necessarily fraught with imminent danger to the property of others by merely letting the contract to a so-called independent contractor. The defendant

117 M.—5.

railway company evidently realized this, because the contract makes provisions for retaining out of the earnings of those who do the work such sum as may be necessary to pay for damages done to others.

Moreover, the railway company, under its contract, had the undoubted right to stop any work at any time, to start it again, and to direct the manner of its performance. It stopped the clearing at a time when it could well have been done without danger to adjacent property. It was started again after a protracted drought, and at a season when fires upon or near lands of the description surrounding this right of way are extremely dangerous. There is sufficient in the record upon which to base a finding that the work of clearing was resumed on September 1, 1908, at the instance of the defendants. The right to control and the duty so to do under the conditions then existing, easily distinguish this case from Shute v. Princeton Township, 58 Minn. 337, 59 N. W. 1050, wherein it is stated that:

"Pinz was an independent contractor, and the town reserved no right, and made no effort, to direct the manner in which he was to perform his part of the contract. He was to do certain work upon the road, including the burning of the brush, an innocent and lawful act in itself. At what time and under what circumstances he should do this was wholly within his control."

It was a question for the jury whether, at the time the work of clearing was directed to be resumed, the conditions were such that due care for the rights of adjacent property owners required the defendants to take any precaution to prevent fire from spreading, if it was then to be used to clear the right of way. In our opinion the case was submitted to the jury upon quite as favorable a theory to the defendants as they were entitled to.

It is earnestly contended that the court erred in not directing a verdict for the defendants, and in refusing a new trial, on the ground that Foley Brothers, Larson & Co. were independent contractors, and so were J. E. Edwards and J. K. Olson, for whom Tischart worked. There is very little left to the control and independent action of Foley Brothers, Larson & Co. in the contract. It would seem more correct to term them servants. They were to sublet all

the work, the contracts therefor to be approved by the railway company, this presumably to include the price to be paid.   They were to personally superintend the work and receive a percentage for their compensation upon the price paid the subcontractors.   All such subcontractors were to be considered foremen of Foley Brothers, Larson & Co.   If, as between the railway company and its contractors, J. E. Edwards and J. K. Olson were merely foremen, so that the company could treat them in relation to the work as servants of the contractors, it would seem to follow that third persons who suffer from acts done while engaged in that work should also be permitted to consider them foremen of the contractors.

It is undoubtedly true that reserving supervision of a job and directions in its execution to an extent necessary to secure its performance in accordance with the contract will not destroy the independent character of the contractor.   But, taking this contract by its four corners, it is difficult to escape the conclusion that Foley Brothers, Larson & Co. were hired as managers and superintendents of the railway company, and were to receive a percentage upon the cost of the construction of the line, they to personally superintend the work of the subcontracting foremen under the direction and control of the railway company as to time, amount, mode, and manner of the work. We quote from the contract of the railway company:

"All directions and instructions given by assistant engineers, inspectors, or other persons appointed by the party of the first part, or their chief engineer, during the construction of the work covered by this contract must be fully carried out.   *   *   *   Said party of the second part also hereby agrees to conform in all respects to the directions and instructions of said chief or assistant engineers or parties of the first part, relative to the said work, and shall progress with the same at such time or times, in such manner, and at such particular points on the line of said work, as said chief or assistant engineers shall direct."   "The said party of the second part agrees *   *   *   to prosecute the same [work] with such force and means as will, in the opinion of said chief engineer or assistant, insure the completion,   *   *   *   to be subject at all times during the progress

of said work to the directions of the chief or assistant engineers, **or** party of the first part, as to the mode of doing the same.   *   *   * Said second party   *   *   *   agrees not to assign or transfer this contract, or relet any of said work, without the written assent of said first party, but shall constantly superintend said work in person. Said second party also agrees not to employ any men, either as over-seer or laborer on said work, who shall have been dismissed from any other work for bad workmanship, intemperance, or disorderly conduct, but shall, whenever directed by said chief or assistant engi-neers, dismiss any and every person who is disorderly, intemperate, quarrelsome, unfaithful, or unskilful."

In regard to the work of clearing, which Tischart was engaged in when the fire was used, it provides: "The right of way belonging to the railway company for 100 feet in width   *   *   *   shall be cleared of all trees, brush, logs, and fences, all suitable timber to be cut into wood, ties, piling, or saw logs, if the engineer shall so direct, and all brush and rubbish, together with logs not cut as above, shall be burned up, without injury to adjacent property."

One other matter already referred to is significant of the rela-tions between the railway company and Foley Brothers, Larson & Co. A contractor undertakes a work for the profit there is in it to him. If he sublets it, he seeks the lowest bidder, in order to increase his gain. In this case the advantage in seeking the lowest bidder for the actual construction went to the benefit of the railway company, and necessarily decreased the profit or compensation of Foley Broth-ers, Larson & Co., for the latter were to be paid a percentage of the actual cost. The outfit used by the contractor in the construction was rented to the railway company at certain compensation. There are many other features in the contract which confirm the view above expressed that Foley Brothers, Larson & Co. were, as to the prose-cution of the work, superintendents and managers of the railway company, and in its behalf made contracts with others for the work, directing them as foremen. At least, this view is correct as to all matters involved in this action, so that it was not proper to give the

jury the instructions asked by defendants in regard to independent contractor, or define the legal meaning of that term.

The foregoing covers all the errors assigned on the charge and refusal to give requests except this: The court refused to give request No. 14 of the defendant, which reads:

"There can be no recovery for damages to standing trees on the northeast quarter of section 17. · It appears that some were blown down by the wind before the fire"—and request No. 15:

"There can be no recovery for standing trees."

We think these requests were sufficiently covered in the charge in this language: "Some evidence has been given as to the value of various buildings, and as to the value of certain standing timber, and as to the value of fences, and as to character and construction of certain bridges. These are all a part of the land. Evidence as to them has been received, because of furnishing to you side lights, or aids, if they do, in getting at the value of the land. You are to get at the damages to the land by comparing the value before and after the fire. * * * You cannot give damages for any injury which came by the wind blowing down standing timber."

The court instructed the jury, in effect, that if plaintiffs were to prevail the insurance company was entitled to recover the amount it paid under its policy, but not in excess of the amount of damage done to the different items insured. The amount of the policy was $3,200. Two hundred dollars thereof was on wearing apparel, and it is claimed only $8 worth of wearing apparel was burned; hence, the full amount of the policy being allowed by the verdict, it must be reduced $192. We do not think it concerns the defendants how the verdict is apportioned between plaintiffs. The jury found that the value of plaintiff Smith's property destroyed through defendants' negligence was $6,255.90. The only one that can complain of the fact, if it be so, that the insurance company should have less and Smith more by $190, is manifestly plaintiff Smith, and not either of the defendants.

We have examined the record with care, and are of opinion that the conclusion of the jury that the fire set by Tischart on the right of

way of the railway company was the fire that was permitted to escape and destroyed plaintiff Smith's property is not mere conjecture, but finds ample support in the evidence.

We have examined the errors assigned on the reception of evidence objected to by defendants, and find no prejudicial error in the record.

It is evident that in the closing address to the jury plaintiff's counsel made statements which ought to have no place in a court of justice; but the trial court at once, upon his attention being called thereto, fully and emphatically instructed the jury to disregard the remarks. Upon the record as made, and the trial court's judgment that no prejudice resulted to defendants, we are not inclined to regard the obnoxious words of such serious consequence to the rights of the defendants that a new trial should be granted on that ground.

Order affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.