## STELLA PELOWSKI v. J. R. WATKINS MEDICAL COMPANY and Another.[1]

December 27, 1912.

Nos. 17,780—(128).

**Action for wrongful death — defendant contractor not entitled to directed verdict.**

A cornice in a brick wall faced with cut stone, in process of erection, fell and killed a laborer of a subcontractor engaged in setting the cut stone. The general contractor was doing the brickwork, and imbedded in the masonry the steel anchors which secured the stone facing to the brick part of the wall, and by contract with the subcontractor doing the stonework stipulated that the latter should do the work in a workmanlike manner and under the direction and to the satisfaction of the general contractor, and prosecute the several parts thereof at such time and in such order as the general contractor might direct. The stonesetting and bricklaying proceeded somewhat dependently, in that after each course of stone was set the brick wall wa. required to be built up even therewith and anchored thereto before the next stone course could be set. The general contractor's superintendent was always at the works, and observed the way in which it was done, and there is some evidence that he exercised authority over

[1] Reported in 139 N. W. 289, 618.

---

Note.—On the question of negligence of fellow servant concurring with failure of the master to establish or enforce proper rules or regulations for conduct of business, see note in 4 L.R.A. (N.S.) 516.

the stonesetters. *Held,* that the general contractor, in a suit brought against him for the wrongful death of the laborer so killed, was not entitled to a directed verdict.

**Special findings not contradictory.**

The special finding of the jury that the stonesetters were not negligent does not indicate perverseness, nor does it impugn the general verdict and the special finding that the defendant's negligence was the proximate cause of the death of plaintiff's intestate, so that a new trial should be had.

**Verdict sustained by evidence.**

The evidence justifies the verdict that defendant's negligence was the proximate cause of the death sued for.

**Charge to jury.**

No prejudicial errors resulted to defendant from the instructions given to the jury, nor from a refusal to give a requested instruction.

Action in the district court for Winona county by the administratrix of the estate of Paul Pelowski, deceased, to recover $7,500 for the death of her intestate. The case was tried before Snow, J., who, at the close of the testimony denied the motion of defendant Wells Brothers Company for a directed verdict, and a jury which answered the special questions set out in the opinion and returned a verdict for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*P. J. McLaughlin,* for appellant.

*W. J. Smith* and *Webber & Lees,* for respondent.

HOLT, J.

In this action for wrongful death the administratrix recovered the full amount permitted by the statute. The defendant Wells Brothers Company appeals from the order denying its blended motion for judgment notwithstanding the verdict or a new trial.

There is very little conflict as to the facts in this case. The J. R. Watkins Medical Company, one of the original defendants, caused to be constructed on its premises in Winona a substantial business block or building. It let the contract for its construction to the defendant

the Wells Brothers Company, a corporation. The latter retained the concrete, brick and carpenter work, but sublet the furnishing and setting of the stone work to the Reed Stone Company, who, in turn, sublet the setting of the stone in the wall to Lowrie & Son. The building was only one story, but the walls, resting on concrete foundation, were over 30 feet in height, and were of brick, veneered or faced with Bedford cut stone. From the foundation to the top or caps of the windows, 26 feet above the foundation, the walls were not less than 2 feet thick; about 3 feet higher, or where the ceiling was to be, the brick backing was reduced to about 12 inches and the stone veneer was 5 inches. From the foundation to the cornice the exterior veneer of the walls, where not made up of pilasters or ornamental columns, consisted of large slabs of this sawed or cut Bedford stone. The width of each slab—that is, the distance it extended into the wall—varied from 4 inches up.

In the erection of the wall Lowrie & Son, by their stonesetters, would set a course of this veneer, followed by the bricklayers of Wells Brothers Company, who would fill in with brick and lime and cement mortar to the top of the stone course and anchor that to the brick. Each stone had two holes cut in the upper edge close to the side next to the brick, and an inch wide groove, not so deep as the holes, from these to the brick backing. To hold the stones secure in the wall there were provided so-called anchors, 8 or 10 inches long and an inch wide, of quarter-inch steel or iron, with a one-inch bent at one end to fit into this hole in the stone, and the other end bent the same way, only the hook a little longer, to pass over the brick and imbed in the mortar, thus making, with the mortar between the brick and stone, a solid wall of masonry. The anchors were furnished by Lowrie & Son, but were placed and imbedded in the mortar by the bricklayers.

When it came to the cornice, we find that the plans called for, first, a course of stone 1 foot 3½ inches in height and projecting 4½ inches beyond the stone course below it; the next course consisted of stones 1 foot 7 inches in height, projecting 7½ inches beyond the first course; the third course was 9 inches in height, and projected over the second course 9 inches; the fourth course was 9 inches in height, and projected over the third course 6 inches; the fifth course, called the ashlar, 2

feet 2 inches high, about 6 feet long and 4 inches wide, was to be placed so that the inside surface thereof would be on line with the outside wall under the first cornice course. The stones for the first, second, and fourth of these courses were of such width that it required brick-backing of from 8 to 12 inches to produce the full width of the wall; while the third course, called the binder, consisted of stones 3 feet 3 inches wide, reaching to the inside line of the wall, and hence not requiring any brick backing. Each of the first four courses which projected had the under projecting surface beveled and planed off into mouldings or ornamental grooves. The only means adopted to prevent the projection or overhang of the cornice from tipping the wall over, outside of using the small steel anchors mentioned, were that under the first course in the cornice were placed props, consisting of inch boards, one end of which supported the cornice stone and the other end rested 3 feet below on the ledge above the window caps, and also by two steel or iron anchors in each of the stones in the third course, which, as stated, were wide enough to occupy the whole wall. These last anchors were rods of $\frac{3}{8}$-inch iron about 3 feet long. In the upper side of the stone near the inside edge was a hole drilled, one end of the anchor was bent over the edge of the stone and sunk into this hole, and the other end, which hung down on the inside brick wall, was also bent so that about 3 or 4 inches thereof, sharpened at the end, pointed straight into the wall. This, when driven into the brick wall, tended to prevent the stones of the third and those of the fourth courses, extending further out from the wall, from tipping.

This cornice had been fully completed to and including this third course, and the anchors driven into the brick wall. Whether the stonesetters or bricklayers had driven these in does not appear. On the day previous to the accident the stones on the fourth course had all, or nearly all, been set. There is some dispute as to how many, if any, were lacking. One, or, as some claim, two or three, of the ashlar stones had also been set. But the bricklayers were engaged upon other parts of the building, and had not backed this fourth course, or begun to do so.

About 8:30 in the morning of August 30, while the stonesetter was engaged in setting, either one of the stones lacking in the fourth

course, or else an ashlar stone, the whole cornice on the north wall, 68 feet in length, fell, carrying with it nearly all of the brick backing. Plaintiff's intestate, Paul Pelowski, in the employ of Lowrie & Son, at that time working at the derrick below the cornice, was instantly killed by one of the falling stones.

Plaintiff, Pelowski's widow, as administratrix, brought this action against the J. R. Watkins Medical Company and Wells Brothers Company for damages for the wrongful death of her intestate, setting up the contract relation between the two defendants, that the defendant Wells Brothers Company employed Lowrie & Son to set the stone in the walls, that said Lowrie & Son and said Wells Brothers Company did erect and construct the walls and cornices, that in the work Lowrie & Son were subject to the directions and under the control of the defendants, that defendants failed to supervise and control the erection of the walls and cornices, but they allowed the walls and cornices to be laid and constructed in a negligent and unsafe manner, and that while Paul Pelowski was at work for Lowrie & Son near the north wall of the building, the cornice, because of defendant's negligence in allowing the wall and cornice to be constructed in a negligent and unsafe way, fell and killed Pelowski. When plaintiff rested, the case was dismissed as to defendant J. R. Watkins Medical Company on its motion. At the close of the evidence the defendant Wells Brothers Company moved for a directed verdict. The motion was denied, and the case submitted to the jury. Under the direction of the court, the jury, in addition to the general verdict, was required to answer certain questions. These questions and answers are as follows:

Question: "Were the stonesetters guilty of negligence in setting or anchoring the stone in the cornice which fell?" Answer: "No."

Question: "Was the defendant Wells Brothers Company negligent in the execution of its part in the construction of the cornice which fell?" Answer: "Yes."

Question: "If you answer 'yes' to question No. 4 [preceding question], then state in what particular defendant Wells Brothers Com-

pany was negligent." Answer: "In not building brick backing behind fourth course of stone."

Question: "If you find Wells Brothers Company was negligent, was such negligence a proximate cause of the accident resulting in the death of plaintiff's husband?" Answer: "Yes."

Upon this appeal the amount of the verdict is not assailed, nor are any rulings of the trial court upon the submission or exclusion of evidence. The errors assigned relate to defendant's right to an instructed verdict, to the contention that the verdict is perverse, and should not be permitted to stand, and to alleged errors in the instructions to the jury and refusal to give one requested by defendant.

In determining whether or not defendant was entitled to a directed verdict, consideration must be given to the position Wells Brothers Company occupied in the construction of the wall and cornice. The plans called for a wall with cornice of one solid piece of masonry, save where openings were provided for windows and doors. The outside veneer of stone was to be joined to the brick inside in the process of erection, so as to make the wall an integral mass. The defendant reserved to itself the placing of the brick in the wall, and did join or anchor the stone veneer to it. Necessarily the stone was set before the brick to which it should be joined could be laid. And when it came to the cornice, where each course of stone was to project outside of the one below it, it must be apparent that the safety of the structure suggested the necessity of immediately following up with the brick course and anchoring it securely to the stone. It may be that the laying of the whole fourth course of the stone in the cornice without the brick-backing would not have caused the fall, and that this attempt to place some of the ashlar stones was the straw that broke the camel's back; but there is also ample evidence in the record to sustain the finding of the jury that the accident would not have happened if this fourth course had been backed with brick and anchored. The question is not so much what particular act caused the cornice to fall as this: Did any duty rest on defendant, by virtue of its contract with the subcontractor, or from the position it took in erecting the

120 M.—8.

wall, to see to it that the persons who had a right to be on the street below were not endangered thereby?

It is clear that as to such persons, if injured by a fall of this wall, a prima facie case is made out by proof that the wall fell, that injury resulted therefrom, and that defendant was taking part in its construction. That some one else was also doing part, or at fault in the doing thereof, would not excuse defendant from responsibility for the joint enterprise. But there is an additional reason in the relation existing between defendant and Lowrie & Son. The defendant, in its contract with Reed Stone Company, under whom Lowrie & Son were employed, very properly inserted this provision:

"The subcontractor will commence work immediately upon notice so to do, proceed with the said work and every part thereof in a prompt and diligent manner, prosecuting the several parts thereof at such time and in such order as the general contractor may direct, and will progress its work with the other works of the building and sufficiently in advance of them so as not to delay the progress of the construction of the building."

Under the provision quoted Wells Brothers Company had the undoubted right to stop the setting of the stone till it had opportunity to lay the brick and properly anchor and join thereto the stone already set. And we think that under this reserved right, as well as because the wall and cornice were the joint product of defendant and Lowrie & Son, there rested a duty on both to see to it that it was so erected as not to endanger the life of one who might be on the street below. The defendant was not entitled to a directed verdict. As to the construction of contracts with similar provisions, see Carlton County Farmers Ins. Co. v. Foley Brothers, 117 Minn. 59, 134 N. W. 309, 38 L.R.A. (N.S.) 175.

Because the jury found that the stonesetters were not negligent in setting or anchoring the stone in the cornice which fell, counsel for defendant contends that the general verdict and the special findings that defendant was negligent in failing to brick-back and anchor the . stones in the fourth course, and that such negligence was the proxi-

mate cause of the fall, are perverse and cannot stand. The submission of the question of the negligence of the stonesetters to the jury may be regarded as of doubtful propriety; for, as has been above indicated, negligence of Paul Pelowski's fellow servants or his master does not absolve defendant from liability, if its negligence concurred with theirs to bring about his death. Citation of authorities need scarcely be made to the proposition that, where the negligence of two concur as the proximate cause of an injury, it is no defense for the one to say that the other concerned in the act is not also sued, or by reason of the fellow servant rule is not liable. Coleman v. Minneapolis Street Ry. Co. 113 Minn. 364, 129 N. W. 762. Therefore, even if the jury's finding of no negligence on the part of the stonesetters be wrong, it does not necessarily discredit their general verdict or special finding that defendant's negligence caused the death.

Furthermore, the record sustains the trial court's view that there was evidence to submit to the jury from which it could be found that the wall and cornice were constructed as to the stonesetting under defendant's direction, even if the express terms of the contract pursuant to which the work was done be construed as not so providing. The defendant had its superintendent continually on the work, who says, with reference to these very stones in the fourth and fifth courses, that it was his duty to observe when and how they were laid, that he did so do, and that when the stonesetter placed the next to the last ashlar stone hoisted to the cornice prior to the accident temporarily in a position to endanger the wall, he at once directed a different handling thereof, which direction was immediately complied with, thus showing that directions were given by defendant as to the manner of doing the work by the stonesetters, and that the latter understood their duty to follow such directions.[1] In that view of the situation the defendant was negligent, not only in failing to back and anchor the fourth course in the cornice, but also in suffering Lowrie & Son to begin to set the ashlar course, thereby endangering the stability of the structure. The work of defendants and that of the stonesetters was interwoven to produce the wall and cornice. While this work was progressing, both were responsible if their joint efforts resulted in a product which falls and injures one on the street below.

[1][See modification on page 118, infra.]

It does not appear necessary to here apply nice distinctions in the definitions of proximate cause. However, it seems to us that the language of Chief Justice Gilfillan in Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 50 N. W. 1034, 16 L.R.A. 203, applied by the jury to the facts in this case, would justify the finding that negligence in failing to brick-back and anchor the fourth stone course in the cornice was the proximate cause of Pelowski's death. "The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result." The new, independent cause claimed by defendant to have been the proximate cause of the accident, namely, the setting of the ashlar course, the jury on the evidence could very well have found inadequate to produce it, had the fourth course been properly brick-backed. See, also, Campbell v. Railway Transfer Co. 95 Minn. 375, 104 N. W. 547, and Russell v. German Fire Ins. Co. 100 Minn. 528, 111 N. W. 400, 10 L.R.A. (N.S.) 326.

Although the jury in the special finding pointed out that one physical cause for the fall of the cornice was the lack of brick-backing and anchorage for the fourth course thereof, it does not therefore necessarily follow that the proposition submitted to them in the general charge, whether the defendant assumed such position toward the stonesetters that thereby it could be guilty of negligence as to the time and manner in which the entire construction of the walls and cornice proceeded, was not also resolved in plaintiff's favor. The defendant ought not to be in a position to take advantage of rulings too favorable to it on matters affecting the duty of Lowrie & Son as to anchoring the stone veneer to the brick. Without reference to the contract, the evidence is all one way that the stonesetters provided the short anchors, and made holes and grooves for their reception in the stones, but that the bricklayers invariably set and imbedded these in the wall, so as to make a unit of the stone and brick.

From what is already said, it is apparent that we do not consider it was error for the court to refuse defendant's request to instruct the jury that it was not responsible for the manner of fitting or setting the fourth and fifth courses of cornice stone, nor in the charge that, if the negligence of both defendant and the stonesetters concurred as the

proximate cause of Pelowski's death, a recovery could be had. No objection was made at the trial to the charge as given; but on the motion for a new trial several errors were alleged, and are urged here. Unless error in substance is found, so that we may say that, had the instruction challenged not been given, the result might have been different, it should not be held to have been prejudicial.

By the contract with the owner, the defendant Wells Brothers Company undertook to see that the construction of the building was done properly, and with the Reed Stone Company for the stonework it stipulated that the subcontractor shall sufficiently perform, furnish, and finish the work in a thorough and workmanlike manner under the direction and to the satisfaction of the general contractor and architect. Under this provision, and the one hereinbefore referred to, it may be that the trial court placed a too limited construction upon the authority of the contractor over the subcontractor; but in this defendant is not prejudiced. However, we think the contract stipulations, and the actual manner of constructing the wall and cornice by defendant and the subcontractors, justified the instruction to the effect that, if the work in the construction of the wall and cornice was done under the direction of Wells Brothers Company as to means and methods of doing it, the company must exercise ordinary care to see that the same was reasonably safe.

One instruction is criticised because it submitted to the jury whether there was negligence on the part of defendant in incorporating into the wall any defective stonesetting which caused the fall. The court could not assume that the jury might find no negligence in this regard, and, further, if it be true, as defendant claims, that the only negligent proximate cause found by the jury was the failure to incorporate the fourth cornice course of the stone into the structure, it is hard to perceive how defendant could have been prejudiced by the instruction given. The court also gave an instruction to the effect that Wells Brothers Company had engaged to erect the building for the owner, and, in so doing, to see to it that the materials used by the Reed Stone Company were suitable and proper, and that the work performed by that company was workmanlike, and if defendant negligently failed to exercise care in this respect in regard to this wall

and cornice, and such failure was a proximate cause of Paul Pelow-ski's death, defendant is liable. We do not consider this instruction inapplicable to the evidence or prejudicial.

The other challenged portions of a charge eminently fair, exhaustive, and fully guarding the rights of defendant, we deem so clearly right that we shall not discuss them.

The order appealed from is affirmed.

On January 24, 1913, the following order was filed:

In the opinion an incident in regard to the temporary placing of an ashlar stone so as to endanger the wall is erroneously stated as having been observed and corrected by the superintendent of the defendant contractor, whereas it was done by the superintendent of the architect and defendant owner. The deduction to be drawn from this mistaken premise is not of sufficient materiality to change the result, or warrant a reargument of the case, and the application is therefore denied.