Middleton, J.
The evidence introduced by the plaintiff, and which is uncontradicted, is as follows:
The village of Ellsworth (unincorporated) and the *527 premises in question were originally in Trumbull county but have been located in Mahoning county since the creation of that county. In November 1805, a petition was filed by certain citizens with the commissioners of Trumbull county to appoint a committee to lay out a road (now highway No. 224) from Canfield to Atwater. In June 1806, the report of that committee was received by the county commissioners and was approved and the road was ordered to be “opened agreeable by law 50 feet wide.” In June 1808, the commissioners accepted and approved a further report which changed, apparently slightly, the course of the road previously established but did not change the width thereof. The record does not reveal the exact location of the road so established but it is clear that it was established near the east and west quarter section line of the township. The evidence indicates and it is conceded that in 1860 that road was widened to 60 feet west from the center section line of Ellsworth township. That widening did not involve that portion of the highway here in question. There was evidence that in 1838 the owner of lot No. 32 located at the northeast corner of the intersection of said roads and directly north and across from lot No. 17 deeded to the commissioners of Trumbull county two rods or 33 feet off the south end of lot No. 32. The effect of that deed as possibly widening highway No. 224 at that point is not here involved and the issues of this case do not require a determination of the extent, if any, to which the original northerly boundary line of highway No. 224 may have been changed by private grant. We are here concerned only with the southerly boundary line of that highway where it is abutted by plaintiff’s premises.
The record does not disclose any appropriation proceedings increasing the width of that highway adjacent to plaintiff’s premises or to the east thereof.
In June 1807, a similar petition was filed with the *528 county commissioners of Trumbull county to establish a north and south road (highway No. 45). That petition was granted in March 1808. The order granting that petition established the north and south road on the center line through the center of Ellsworth “50 feet in width.” It is conceded that in 1860 that road was widened to 60 feet by virtue of easement deeds for five feet on each side of the road. The record does not disclose any appropriation proceedings or deeds increasing the width of that highway to more than 60 feet.
Both highways were improved at an early date and were later paved. There is no evidence that the center line of improvement of either highway was changed in connection with the improvements and pavement thereof made from time to time. We must, therefore, assume that both highways are now located as originally located, and that the center line of the improved portion of each highway has always been and is today the center line of the right of way of the highway. Surveys in recent years established that the center line of pavement with respect to highway No. 224 lies 8.73 feet north of and parallel to the east and west quarter section line of said Ellsworth township. Likewise, recent surveys established that the center line of pavement with respect to highway No. 45 lies 6.05 feet east of and parallel to the north and south quarter section line of said Ellsworth township.
The record contains no evidence that the public has made any use whatever of any area along what is now highway No. 224 greater than 25 feet in width south of the center line of the present paving adjacent to plaintiff’s premises or along what is now highway No. 45 greater than 30 feet in width east of the center line of paving adjacent to plaintiff’s premises. So far as the record reveals neither the trustees of Ellsworth township nor the commissioners of Mahoning county *529 ever asserted any rights in the east and west highway adjacent to plaintiff’s premises greater than 25 feet in width south of the center line of the present paving thereon or in the north and south highway adjacent to plaintiff’s premises greater than 30 feet in width east of the center line of the present paving thereon. The right of the public or the state of Ohio to use or improve the highways to a greater width than 25 feet lying south of the center line of paving on highway No. 224 and 30 feet lying east of the center line of the present paving on highway No. 45 was first asserted when the defendant recently began the improvements of those roads as above stated.
The defendant offered in evidence two atlases, one published in 1874 and the other in 1899. They had been prepared by a Philadelphia company, are general in character and contain business directories of various towns and cities, lists of lawyers and members of other professions, plats of towns and other similar information. Although physically in possession of the county auditor, the atlases were not prepared by anyone connected with the local government, were not filed as records and have no official standing. No witness knew the source of any of the information contained in those atlases. The trial court properly ruled that under such circumstances the defendant could not rely upon the drawings contained in those atlases as proof of the width of the roads.
Although ancient maps are held in high regard by the courts, not every ancient map is admissible in evidence. One well recognized rule is that an ancient map made by a private person, or as to which no official authorization or recognition appears, is inadmissible. See 8 American Jurisprudence, 819; 11 Corpus Juris Secundum, 709, Section 113; and Ann. Cas. 1916C, 178.
The atlases here presented do not satisfy the requirements for admissibility.
*530 Plaintiff’s premises on which the improvements above mentioned are located comprise an area of approximately three-fourths of an acre. Plaintiff’s title to those premises is not in dispute except where the property abuts on the two highways. Brief reference will be made to the deeds presented in this record showing the chain of title of the plaintiff. Those deeds begin with one executed April 21, 1801, which was before either highway was created. That deed uses the north and west sides of section No. 13 as boundaries. Other deeds followed in 1810, 1814, 1819 and 1821, which conveyed all or a part of original lot (section) number 13 or all or a part of lot number 17 of the subdivision. None of those deeds refer tó the highways. The record does not disclose the manner in which the rights of way for the highways were procured. The record is silent as to whether the abutting owner retained the fee to the center of the highways subject to highway purposes.
First mention of either road is contained in a deed dated April 4, 1826, by one Gardner to one Watson. The description of the premises conveyed by that deed reads:
‘ ‘ Commencing at the center on the northwest corner of the southeast quarter of said township thence running south on the road that leads to Salem [highway No. 45] 64 rods to land of William Bottom, thence east” to lot No. 19, “thence north on the line of said lot No. 19 to the highway that runs east and west through the center of said Ellsworth thence west by said highway * * * to the place of beginning.” It is to be noted that no original monuments exist to identify the boundary of the land of William Bottom.
The next deed is dated March 21,1835. The description in it reads: “Commencing at the center on the northwest corner of the southeast quarter of said township.” That description then reads, “thence run *531 ning south 12 rods and 2/3 to a post,” without mentioning the road, “thence east 12 rods and 2/3 to a post.” No such original posts were found. After reaching the southeast corner of the tract being conveyed the description then reads, “thence north * * * to the line of the highway that runs east and west through the center of said Ellsworth, thence west by said highway” a stated number of rods “to the place of beginning.”
The next deed is dated December 31, 1841. The description is the same as that contained in the deed of 1835.
The next deed is by a master commissioner in chancery and was executed as a result of a foreclosure action. It is dated November 1, 1847. In that deed the description again reads:
‘ ‘ Commencing at the center on the northwest corner of the southeast quarter of said township.” The course then runs south without mention of the road “to a post,” thence east a stated number of rods “to a post” (neither post was found), and thence “due north to the highways and thence west along said highway to the place of beginning and contains nearly two acres of land.” (All emphasis in the foregoing descriptions is supplied.)
No deeds appear of record covering plaintiff’s premises from 1847 to 1926. In 1926 and 1927 a series of eight deeds were executed by those apparently claiming by inheritance from the grantees in the deed of 1847. In each of the deeds of 1926 and 1927 the description is the same as that contained in the 1847 deed except that the word is highway instead of highways in the east boundary line. Then followed, in 1930, an action for partition which involved the rights of several alleged heirs of the grantees named in the 1847 deed. That action in partition terminated with the execution of a deed dated June 13, 1934, by the *532 sheriff of Mahoning county. That deed transferred title to plaintiff’s immediate grantor. The description in the court’s order in the partition suit and in the deed of June 13,1934, authorized by that order, reads:
“Being all of the land lying south of the CanfieldBerlin road and east of the Salem-Warren road and bounded on the east by lands formerly owned by the Board of Education of Ellsworth Township and on the south by lands formerly owned by William H. Cutting, said tract having a frontage of about 9 rods on the Canfield-Berlin road and running south therefrom along the easterly line of the Salem-Warren road about 12 2/3 rods and containing about 3/4 of an acre.”
The final deed — the one to the plaintiff — is dated June 29, 1934, and contains exactly the same description as is contained in the sheriff’s deed dated June 13, 1934.
The defendant attaches much significance to the above descriptions which define boundaries as running to a highway or along a highway or by a highway but no part of the argument with respect to those terms throws any light upon the essential question, “where was the boundary of the highway?” The plaintiff contends that all the descriptions in all the deeds prior to the sheriff’s deed of 1934 uses the intersection of the quarter section lines as the point of beginning. The defendant claims that the words, “commencing at the center on the northwest corner of the southeast quarter” refer to the point where the southerly line of highway No. 224 intersects the easterly line of highway No. 45. Such contention of the defendant, even if valid, sheds no light upon the question, where do those lines intersect? It still leaves for solution the problem whether highway No. 224 is 50 feet or 132 feet in width and whether highway No. 45 is 60 feet or 99 feet in width.
The defendant’s counsel examined witnesses at con *533 siderable length with respect to the descriptions contained in deeds to properties lying to the south of plaintiff’s premises. On the basis of those descriptions and the distances contained therein the defend-ant sought to establish a width of 132 feet for highway No. 224. The witnesses admitted inability to locate any original posts or monuments to the south or east of plaintiff’s premises except some posts set in 1930 by a civil engineer named Eamsey. The source of the information used by Eamsey in setting those posts was not disclosed. The net result of all that proffered evidence was that the only monument definitely located was the one which identified the intersection of the quarter section lines in the center of Ellsworth township. Whether the description, of the premises contained in the deed of the master commissioner in chancery, dated November 1, 1847, commenced at the intersection of the quarter section lines or at the intersection of the south and east highway boundary lines, no monument was located to the south along highway No. 45 to which the distance stated in that deed could be measured. The effort of the defendant to measure back to the north along plaintiff’s premises and thus establish a southerly line of a highway 132 feet in width failed because there was no point to the south from which to start — except a stake set by Eamsey in 1930. The defendant adopted the location of the stake so set by Eamsey notwithstanding the absence of any evidence to support its location.
It is well settled that monuments are of prime importance in settling boundary disputes. The general rule is well stated in 6 Thompson on Real Property (Perm. Ed.), 519, Section 3327, as follows:
“A ‘monument’ is a tangible landmark, and monuments, as a general rule, prevail over courses and distances far the purpose of determining the location of a boundary, even though this means either the shorten *534 ing or lengthening of distance, unless the result would be absurd and one clearly not intended, or all of the facts and circumstances show that the call for course and distance is more reliable than the call for monuments. This rule does not apply when it is evident that the call for a natural object or established boundary line was made under a mistaken belief with reference to the survey. Generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance, course controlling distance, or distance course, according to circumstances. Area is the weakest of all means of description. The ground of the rule is that mistakes are deemed more likely to occur with respect to courses and distances than in regard to objects which are visible and permanent. The reason assigned for this rule is that monuments are considered more reliable evidence than courses and distances. A description by course and distance is regarded as the most uncertain kind of description, because mistakes are liable to occur in the making of the survey, in entering the minutes of it, and in copying the same from the field-book. ‘Consequently, if marked trees and marked corners be found conformably to the calls of the patent, or if watercourses be called for in the patent, or mountains or other natural objects, distances must be lengthened or shortened and courses varied so as to conform to those objects.’ When it comes to courses and distances, the latter yield to the former.”
The trial courts of Ohio have long followed the principles announced above as is indicated by the discussion and citations contained in 5 Ohio Jurisprudence, 741 to 748, Boundaries, Sections 38 to 44.
*535 It is also settled that a public street or road or the boundary line of other property may be used as a monument.
It is, however, definitely stated by all authorities that streets, roads, or property lines, which are themselves required to be located, can not be given controlling effect in fixing the boundaries of other lands. 8 American Jurisprudence, 747, Section 4; 11 Corpus Juris Secundum, 545, Section 5.
Another important fact is that the plaintiff was in possession of the disputed premises when this controversy arose and when this action was instituted. He and his predecessors had been in possession for many years. In the absence of proof to the contrary the law presumes that possession of property peaceably acquired is lawful. Sabariego v. Maverick, 124 U. S., 261, 297, 31 L. Ed., 430, 444, 8 S. Ct., 461, 480. The fact that the plaintiff was in possession of the real estate, exercising rights of ownership and performing acts of dominion, creates a rebuttable presumption that he was invested with some right or title in the premises. 9 Wigmore on Evidence (3 Ed.), 425, Section 2515; 20 American Jurisprudence, 230, Evidence, Section 235; Sedgwick & Wait On Trial of Title to Land (2 Ed.), 545, Chapter 27; Carlton County F. M. Ins. Co. v. Foley Bros., 117 Minn., 59, 134 N. W., 309, 38 L. R. A. (N. S.), 175; Teass v. City of St. Albans, 38 W. Va., 1, 17 S. E., 400, 19 L. R. A., 802; Lessee of Ludlow’s Heirs v. McBride, 3 Ohio, 241, 255. See, also, Harman v. Kelley, 14 Ohio, 502, 45 Am. Dec., 552.
Notwithstanding the apparent diligence of defendant’s counsel in searching for records, no records or other evidence was produced which established that highway No. 224 was ever widened beyond its original 50-foot width along plaintiff’s premises or that highway No. 45 was ever widened beyond a 60-foot width along plaintiff’s premises. As previously stated, there *536 is no evidence of adverse use of the area in question by the defendant or his predecessors or the public.
The plaintiff established a clear chain of title to the premises abutting the two highways at their intersection, that the plaintiff was in possession of the disputed area at the time the defendant undertook to take possession thereof, and that plaintiff or his predecessors in title had been in such possession for an undetermined number of years prior to that time.
There is no evidence that the highways were established or improved on different center lines from the present center lines of paving, respectively. The deeds to plaintiff’s predecessors in title prior to 1934 contain descriptions commencing at the intersection of the quarter section lines; from that point, all ran south a stated distance, either “on the road” or “to a post”; after a course to the east all ran north, either “to the highway” or “to the line of the highway”; and, from that point, all ran west either “along said highway” or “by said highway.” Plaintiff’s deed conveyed to him all the land lying south of highway No. 224 and east of highway No. 45. By reason of the definite location of the center of Ellsworth township and the quarter section lines, the definite location of the center of paving on highway No. 224 as being 8.73 feet north of the east and west quarter section line, and the definite location of the center of paving on highway No. 45 as being 6.05 feet east of the north and south quarter section line, the boundaries of the disputed area are definitely established. The north boundary of plaintiff’s land is a line 25 feet south of and parallel to the center of paving on highway No. 224 (which center of paving is 8.73 feet north of and parallel to the east and west quarter section line). The west boundary of plaintiff’s land is a line 30 feet east of and parallel to the center of paving on highway No. 45 (which *537 center line of paving is 6.05 feet east of and parallel to the north and south quarter section line).
The defendant has shown no title to the disputed premises.
The judgment of the Court of Appeals is reversed and it is ordered, adjudged and decreed that plaintiff’s title be and it is quieted, and that plaintiff is the owner in fee simple of the disputed area abutting the two highways located as above stated and in acccordance with more detailed description of such area contained in the journal entry of this court entered herewith.

Judgment reversed.

Weygandt, C. J., Taft, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.