# PETER AARNES v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 4, 1915.

Nos. 19,136—(104).

**Injury to servant — respondeat superior.**

> In an action for damages by an employee for personal injuries, the question arose as to whether the negligence complained of was that of the defendant or of an independent contractor. Upon examination of the contract under which the work was done, it is *held* that defendant had such right of control over the manner, means, time, place and results of the work that the doctrine of *respondeat superior* applies.

Action in the district court for Otter Tail county to recover $7,200 for personal injuries received while in the employ of defendant. The case was tried before Parsons, J., who denied defendant's motion to dismiss the action on the ground that from the evidence it appeared plaintiff was not in the employment of defendant but of an independent contractor, and for the further reason that it appeared conclusively from the evidence that the injury was due to the negligence of a fellow servant, and a jury which returned a verdict for $1,285.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Thomas D. Schall, B. C. Thayer, M. J. Daly* and *T. D. Sheehan,* for respondent.

SCHALLER, J.

Plaintiff was injured December 11, 1913, while working as a carpenter on a hotel building at Glacier National Park. This building

[1] Reported in 152 N. W. 856.

Note.—The authorities on the question as to who is an independent contractor are presented in notes in 65 L.R.A. 445, and 17 L.R.A. (N.S.) 371.

was being constructed under the terms of a contract between E. G. Evensta Co. and the defendant. A handle on a windlass, used in the work of construction, became detached, fell and struck the plaintiff.

The only question on this appeal is whether plaintiff was working for the defendant or for an independent contractor, and it is conceded that this question must be determined from the written contract entered into between Evensta Co. and the defendant.

The contract recited that the company proposed to construct an annex and kitchen at one of its stations, a hotel, power plant and other buildings at another place, a hotel and other buildings at still another place and to construct other buildings and works or changes and additions to present buildings at some of its existing camps or at new camps to be established. The contractor agreed to furnish labor, tools and material, other than that furnished by the company, necessary for the construction and completion of so much or so many of said buildings and works as it should be directed from time to time to construct. It also agreed to install and operate one or more portable sawmills at places to be selected by defendant which was to furnish the machinery and tools for the mills.

The contract provided that all said work should be carried out strictly in accordance with the plans which would be furnished, and specifications and instructions which would be given from time to time by the architect, engineer or inspectors of the defendant. It also provided that "the contractor shall and will carry on and prosecute the said work in its several parts and branches in such manner, at such times, and at such places as the company may from time to time direct."

It also provided that "the company shall have the right, whenever in its opinion it is necessary or expedient, * * * to stop said work or any part thereof, or reduce the force employed thereon; and that the contractor shall have no claim for damages by reason thereof." In case the work is stopped, "he shall be paid a reasonable compensation, based on contract price, amount of work done, and expenses incurred."

It provided that the "work shall at all times * * * be subject to the supervision of the chief engineer of the company, or of such persons as he shall delegate."

It also provided "that the contractor shall and will, upon the direction of the company, discharge any foreman or other employee engaged in said work, who shall, in the opinion of said chief engineer be disorderly, intemperate, incompetent, negligent or dishonest."

The company agreed to furnish free transportation for men, tools, apparatus, machinery and materials; also agreed to furnish return transportation for men, tools, apparatus and machinery.

The contractor's compensation, it was agreed, should be eight percent of the total amount paid for and on account of labor and materials, including amounts paid for transportation and hauling.

No plans or specifications are attached to the contract or made part thereof.

The contract had the further provision that "No alterations or additions shall be made in the work shown and described in said plans and specifications except on the written order of the chief engineer of the company."

The work was to be commenced at once and be completed on or before October 1, 1914. It was specified that "time is material and of the essence of this contract;" that "said work shall at all times during the progress thereof be subject to the supervision of the chief engineer of the company, or of such persons as he shall delegate."

That the contractor within 24 hours after receiving written notice should proceed to remove from the grounds and premises, and from said work, all condemned materials, whether worked or unworked, and to take down all portions of the work which may be condemned or which in any manner shall fail to conform to such plans and specifications.

There are provisions in relation to disputes between the parties as to the interpretation of the contract, or the plans and specifications, and it is agreed that the decision of the chief engineer as to such interpretation of the contract, plans and specifications, should be conclusive.

From the above it will appear that this is not the form in which building contracts are generally drawn. There are a great many unusual provisions which seem to have been inserted with the distinct purpose of retaining in the defendant the supervision and control of the work in every respect.

No plans and specifications are attached to or made part of the contract. Indeed, it would seem that the work was to be done, not only under the plans and specifications, but also according to and pursuant to instructions to be given by the defendant, through its chief engineer, architect or inspectors.

In determining the question of the relation of the Evensta Co. to the defendant, the court will consider the contract in its entirety; and from such examination determine whether the Evensta Co. had such control over the manner, means, time, place and results as would make it an independent contractor.

This court has announced certain rules which must be taken into consideration in construing this contract.

In Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45, the court cites with approval an extract from 1 Shearman and Redfield, Negligence (4th ed.) § 164, to the effect that:

" 'The true test, as it seems to us, by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished.' "

In Rait v. New England Furniture & Carpet Co. 66 Minn. 76, 68 N. W. 729, it is stated that:

"In every case the decisive question in determining whether the doctrine of *respondeat superior* applies is, had the defendant the right to control in the given particular the conduct of the person doing the work. If he had, he is liable."

In Corrigan v. Elsinger, 81 Minn. 42, 83 N. W. 492, the rule is amplified as follows:

"The test by which to determine whether the person who negli-

gently causes injury to another was acting as an agent or employee of the person sought to be charged, or as an independent contractor, is, did the person so sought to be charged have the right to control the conduct of the wrongdoer in the manner of doing the act resulting in such injury?    *    *    *    If he had such right, either as to the time, place, or manner of doing the act, he cannot absolve himself from liability for the negligence of the wrongdoer on the ground of independent relation, even though such wrongdoer was a competent and fit person to do the work, and was acting under a contract to do the specific act, and not as an ordinary employee."

In the late case of State v. District Court of St. Louis County, 128 Minn. 43, 150 N. W. 211, the rule is laid down that "the test for determining whether one person is the employee of another, within the rule making the employer responsible for injuries resulting from the negligence of his employee, is whether such person possessed the power to control the other in respect to the transaction out of which the injury arose."

Tested by these rules, we are constrained to hold that, under the terms of the contract between the Evensta Co. and the defendant, the Evensta Co. was not an independent contractor, and that the doctrine of *respondeat superior* applies.

It appears that the defendant had control over the Evensta Co., not only in the time, place and manner of doing the work, but over the work itself and over the servants employed therein.  The Evensta Co. was not only chargeable with the result of the work, but under the terms of the agreement the work could be stopped at any time, the contractor having no recourse except compensation, measured by a percentage of the amount expended up to the time that the work was stopped.  The defendant did not agree to do any particular amount of construction at any time or place, nor did it agree to furnish any particular plans or specifications for any building, nor did it agree that the work should be commenced at any particular time; indeed, it appears that all of these matters were left in the sole control and judgment and discretion of the defendant itself.  The

Evensta Co., under this contract, had no legal right to demand that the defendant do any construction whatsoever.

Under these circumstances, taking the instrument by its four corners, we cannot say that the provision that time is of the essence of the agreement or that the work should be completed before a certain date, in any way changed the effect of the more specific provisions regarding the time, place and manner, of doing the work; the amount of work to be done; the furnishing of materials; the discharging of employees; the stopping of the work altogether; the taking over of the work by defendant and the right to have the work done under plans, specifications or even instructions, at the option of the defendant. Defendant had the right to control the conduct of the Evensta Co., as to time, place and manner of doing the work, and within the doctrine of the cases above cited, the Evensta Co. was not an independent contractor.

Order affirmed.