# OSCAR ELLIASON v. WESTERN COAL & COKE COMPANY AND OTHERS.[1]

March 6, 1925.

No. 24,390.

**Fuel dealer may be liable for injury caused by negligence of driver of truck which he hires.**

1. A fuel dealer hired a truck to deliver coal. He agreed to pay the owner of the truck one dollar a ton for his services. The owner's son, who drove the truck, was told to come to the dealer's yard every morning until there were no more orders to be filled by him. On a certain day the son delivered a load of coal, collected the price, and went home for the night. The next morning, while on his way to the yard to turn in the delivery slips and the money and to haul more coal, he had a collision with a motor cycle and injured the rider. *Held* that the jury might find that the driver of the truck was acting in the course and within the scope of his employment and that the fuel dealer was chargeable with the consequences of the driver's negligence.

**Finding of negligence sustained.**

2. The evidence warranted the jury in finding that the truck was operated in a negligent manner at the time of the collision.

**Verdict not excessive.**

3. The amount awarded by the jury is not so excessive as to require a new trial.

*Headnote 1.  See Master and Servant, 26 Cyc. p. 1576.
Headnote 2.  See Master and Servant, 26 Cyc. p. 1575.
Headnote 3.  See Damages, 17 C. J. p. 1091, § 408.

Action in the district court for Hennepin county to recover $22,500. The case was tried before Bardwell, J., who at the close of the testimony denied the motion of defendant company for a directed verdict, and a jury which returned a verdict for $17,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant company appealed. Affirmed.

*Jamison, Stinchfield & Mackall*, for appellant.

*Olof L. Bruce*, for respondent.

[1]Reported in 202 N. W. 485.

LEES, C.

A motor truck, owned by William N. Hoover and driven by his son George, collided with respondent's motor cycle and respondent was injured. He brought this action to recover damages from the Hoovers and from the Western Coal & Coke Company, and obtained a verdict of $17,500 against the three defendants. The coal company has appealed from an order denying its motion in the alternative for judgment or a new trial. The principal question is whether appellant is responsible for George Hoover's negligence in operating the truck.

Appellant was a retail coal dealer in the city of Minneapolis. It owned a number of delivery trucks and hired others in the busy season. The Hoover truck was one it had hired. It bore a sign which read "Western Coal & Coke." In September, 1922, this truck hauled 45 tons of coal for appellant. For this service the Senior Hoover was paid one dollar a ton. There was evidence which would warrant the jury in finding that a portion of the 45 tons of coal was hauled before and a portion after September 19, the date of the accident; that when George began to do the hauling appellant's yard man told him to come "every morning until he didn't have enough orders to go around;" that he hauled one or more loads of coal for appellant on September 18, collected $17 from the person to whom he made delivery, and, as it was late in the day, took the money and some delivery slips home with him and kept the money and slips overnight; that the next morning he started from home, carrying the slips and the money with him, and was on his way to appellant's yards, distant about 40 minutes run by truck from his father's house, when the accident happened; that when he started on the trip his purpose was to turn the money and slips over to appellant and to haul more coal, and that in the afternoon following the accident he did haul a load of coal for appellant.

If the accident had happened while George was on his way from the appellant's yard to the house of one of its customers to make a delivery of a load of coal, there would be no doubt about appellant's liability. Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 Am. St. 564; Dunn v. Reeves Coal Yards Co. Inc. 150 Minn.

282, 184 N. W. 1027. In the Waters case, the negligent act consisted in the driver's failure to properly replace the cover of a coal hole after making a delivery of coal; and in the Dunn case, in the driver's negligent operation of the truck while making a delivery of coal. In Rait v. New England F. & C. Co. 66 Minn. 76, 68 N. W. 729, Mr. Justice Mitchell said:

"In every case the decisive question in determining whether the doctrine of respondeat superior applies is, had the defendant the right to control in the given particular the conduct of the person doing the wrong. * * * If this control existed, it makes no difference whether the person doing the injury was the 'servant' of the defendant, in the popular sense of that word, or a person merely employed to do a specified job or piece of work."

In Meyers v. Tri-State Automobile Co. 121 Minn. 68, 140 N. W. 184, it was said that the right of control is the test of the existence of the relation of master and servant. In Waters v. Pioneer Fuel Co. supra, the court said that, had the driver of the coal wagon been employed by the day or month and furnished with the team and wagon by the company, its control of him and of his acts would not have been greater or different.

The doctrine of respondeat superior rests in part at least upon the power of the master to select, control and dismiss his servants. In determining whether the defendant is liable, proper inquiries are: What was the tort feasor employed to do? Was he doing something within the range of the contract of hiring? Who owned the instrumentality by means of which the tort was committed? If it did not belong to the defendant, was the tort feasor's use of it expressly or impliedly authorized? Was he on or off duty at the time and place of the injury to plaintiff? These are matters of probative significance. Their significance may be so clear as to warrant the court in holding that as a matter of law the rule of respondeat superior is or is not applicable, but, if more than one inference may fairly be drawn from the facts, or if there is a conflict of testimony regarding the facts, then the question should be submitted to the jury. If the relation of master and servant exists between the de-

fendant and the tort feasor, the test of responsibility is usually stated thus: Was the servant acting in the course and within the scope of his employment when the tort was committed, or was he at liberty from the service and pursuing his own ends exclusively? Applying this rule in Kuehmichel v. Western U. Tel. Co. 125 Minn. 74, 145 N. W. 788, L. R. A. 1918D, 355, it was held that, where the accident happened during the servant's hours of employment while, in obedience to a call from the master, he was on his way from his home to his master's office, the master was liable. In addition to this case respondent cites Fransen v. Kellogg T. C. F. Co. 150 Minn. 54, 184 N. W. 364; Behrens v. Hawkeye Co. 151 Minn. 478, 187 N. W. 605; and Stoneman v. Washburn-Crosby Co. 153 Minn. 331, 190 N. W. 605. In the first case the automobile was owned by defendant, and, at the time of the accident, was being operated by its employe in its business; in the second case, defendant's truck, driven by an employe, injured plaintiff while the driver was on his way to his home with the truck loaded with gasolene, his purpose being to get his noonday meal and then go over his usual route to deliver the gasolene; and, in the third, the automobile was owned by the master and furnished to the servant, a city salesman, for his use in soliciting business for the master. The accident happened during the hours of his employment and while he was following the usual route from his home to his place of work, intending to stop at a doctor's office for treatment before beginning his day's work. In each of these cases the employer was held liable for the negligence of the employe in driving the employer's vehicle. The facts in each differ in one respect or another from the facts in the case at bar. Here the truck was not owned by the employer, the driver was not one of its regular employes and had no fixed hours of employment; he might stay at home or go to work as he saw fit or as his father directed.

Was George Hoover under appellant's control at the time of the accident? By this we do not mean actual control or direction, for that is not essential, but rather the control which the law sees when one person performs services for another. Was he acting in the course of his employment after he left his father's house on

the morning of the accident? Appellant insists that the question must be answered in the negative and cites numerous cases to support its position. Tornroos v. R. H. White Co. 220 Mass. 336, 107 N. E. 1015, is typical of those upon which it relies. There the accident happened when a truck owned by defendant was being driven to defendant's store in the morning to begin the delivery of goods to its customers, the driver being an employe of the company which had sold the truck to defendant, whose duty it was to instruct defendant's employes how to operate the truck. The court held that defendant was not liable, saying that the place where the instruction of defendant's servants was to begin had not been reached, no employe of defendant was on the truck at the time of the accident and the business of the defendant had not begun.

In McGrath v. Wehrle, 233 Mass. 456, 124 N. E. 253, it was held that the driver of defendant's truck, when using the truck for the sole purpose of going to his home, was acting outside the scope of his employment; but in Depue v. Salmon Co. 92 N. J. Law, 550, 106 Atl. 379, defendant was held liable for an injury inflicted by an employe who used defendant's automobile, with his permission, to go home at night and return to business in the morning in order to get to work early on account of the pressure of defendant's business.

Appellant cites many cases holding that the owner of a car who keeps it at a public garage, the proprietor agreeing to deliver the car to the owner and return it to the garage, is not liable for the negligence of a man employed at the garage while delivering the car or taking it back to the garage. We think these cases are not in point for the reason that this was part of the service the proprietor of the garage agreed to render, hence the driver never became the servant of the owner of the car.

Reference is also made to cases under the Workmen's Compensation Act, holding that a workman while going to or returning from his place of work is not within the protection of the act, but this is so because the act does not cover workmen except during the hours of their service and while they are on the premises where their services are performed, or at a place where their presence is required as part of the service. Subsection j, § 4326, G. S. 1923.

In none of the cases cited were the facts quite the same as in the present instance. In this case, if the coal had not been paid for, it would have been George's duty to bring it back to the yard, and, if he was doing this when the accident happened, appellant would have been liable. If, on the day before the accident, he had found no one to whom he could make delivery and had gone home with the coal and the next morning renewed the attempt to deliver it, or, without making the attempt, was taking it back to the yard, he would have been acting in the course and within the scope of his employment. The money he collected represented the coal he had delivered. He was under the same duty to take it to appellant's yardmaster as he was to take the coal back to the yard if he could not deliver it or if the customer did not pay for it. Appellant expected him to come back with the money or the coal. The fact that he did not return to the yard on September 18 but came the next morning, does not change the situation from a legal standpoint. Of course it was not necessary to use the truck to carry the money to the yard. He might have gone by street car or sent the money by special messenger or by mail. But it was his duty to deliver the money to appellant. He was engaged in the performance of the duty at the time of the accident. The act he was performing pertained to and was not wholly disconnected from the service, and it was in the furtherance of the business of the employer, or at least the jury might properly draw that inference from the evidence.

The tendency of the courts is to enlarge the field of operation of the doctrine of respondeat superior. The doctrine is bottomed on the principle that he who expects to derive advantage from an act done for him by another should answer for any injury which a third person may sustain from the act. The rapid industrial and commercial progress of the times has brought about conditions which render it expedient in the interests of the community to extend the application of the rule that every man, in the management of his affairs, whether by himself or by his agents or servants, shall take care not to injure another, for only by imposing vicarious liability upon employers can vigilance be secured in the selection and supervision of employes to the end that those who are incompetent or

reckless may be weeded out. See 6 Labatt, M. & S. pp. 6731, 6780-6787.

There is warrant for saying that

"Charging him (the master) with the fault of the servant, therefore, is a purely arbitrary act of the law. It may perhaps find its justification in that refuge to which courts at times have found themselves obliged to resort, namely, public policy and convenience." 7 Harv. Law Rev. 107, 111.

The case is near the borderline, but we think the evidence was such as to justify the court in leaving it to the jury to determine whether George Hoover was acting in the course and within the scope of his employment when he injured plaintiff. See Ploetz v. Holt, 124 Minn. 169-173, 144 N. W. 745.

Our conclusion is based upon the special facts and circumstances of this case. We are not to be understood as holding that, by showing merely that plaintiff was injured by an employe of the defendant on his way to or from his place of work, the plaintiff is entitled to go to the jury. Something more than that is disclosed by the evidence in the instant case.

2. The evidence warranted the jury in finding that the truck was driven in a negligent manner. Appellant's contention to the contrary cannot be sustained.

3. The verdict is large, but the injuries were serious, painful, and in part at least of a permanent nature. Respondent was in hospitals for treatment for nearly nine months, incurred expenses aggregating about $1,800, and, at the time of the trial, his loss of earnings amounted to about $2,000. He was 32 years of age, a carpenter by trade and was steadily employed, receiving $6.40 a day as his wages. The amount awarded is not so excessive as to indicate passion or prejudice on the part of the jury.

Order affirmed.