# HENRY MOORE v. KILEEN & GILLIS AND ANOTHER.[1]

March 25, 1927.

No. 25,882.

**Being an independent contractor, relator was not entitled to compensation.**
Relator, using his own motor truck to make occasional hauls of merchandise for respondents, at a stated price per load, his loading and unloading points being designated by respondents but they having no right to control him otherwise, *held* to be an independent contractor and not an employe and so not entitled to compensation.

Master and Servant, 39 C. J. p. 1317 n. 8.
Workmen's Compensation Acts—C. J. p. 50 n. 62, 63.

See note in 65 L. R. A. 445; 17 L. R. A. (N. S.) 370; 14 R. C. L. 67; 3 R. C. L. Supp. 163; 4 R. C. L. Supp. 869; 5 R. C. L. Supp. 738.
See note in 20 A. L. R. 684.

Certiorari on the relation of the plaintiff to review an order of the industrial commission denying compensation in a proceeding under the workmen's compensation act. Affirmed.

*Nelson & Cedergren,* for relator.

*F. C. Elston,* for respondents.

STONE, J.

Certiorari to review an order of the industrial commission which denied compensation upon the ground that the relator at the time of his injury was an independent contractor and not an employe.

Relator owns a small motor truck acquired, apparently, for the purpose of becoming a private carrier and using it whenever possible in that business. He had formerly been a tenant of one of respondents and was on friendly relations with them. When he acquired the truck, they promised him some business. The first hauling he did for them was early in February, 1926, when he took a load of logging camp supplies from Duluth to Arlberg, some 30

[1]Reported in 213 N. W. 49.

miles distant. That trip was arranged between Mr. Kileen, one of the respondents, and the relator. Kileen asked him to make the trip and told him its purpose; that it would take about half a day and that they would give him $10 for it. Relator accepted the offer and made the trip. He got the goods at a Duluth wholesale house, determined for himself how much to take, made the trip and did the unloading without supervision or control by respondents.

On February 11 relator repeated the journey, this time with a load of feed, again determining for himself how much to haul and making the trip without supervision. Another haul was made February 15. Again, on February 24, relator was requested by telephone to repeat the trip. Aside from some tools and food supplies, his load consisted of oats and hay, relator again deciding how much to carry. On his way, he met with the road accident which resulted in the serious injuries for which he is now claiming compensation.

The facts are not materially in dispute and the question is essentially one of law. We conclude that relator was an independent contractor because his undertaking was to do the work not in any manner to be dictated by respondents but according to his own methods. Except as to loading point and destination, he was independent of both supervision and control. It was thought that the trip could be made in half a day but relator was at liberty to take a whole day. The only thing desired by respondents was that each load should arrive in time so that the last team of the day returning to their camp from Arlberg could take in the goods. Without any breach of contract, relator could have interrupted the journey for any purpose personal to himself and could have devoted his truck to other purposes. He might have put his machine in charge of another driver. He might have carried a passenger for hire or accepted a return cargo for his own account. There was nothing continuous about the relation. On the first trip, respondents sent a pilot car ahead of relator to indicate the best route, but that operation was informative and not mandatory. Relator was at liberty thereafter to take another route if there was one. These considerations show the absence not only of actual supervision but also the right to control. The latter ordinarily characterizes the relation

of employer and employe, while its absence makes for an independent contract.

The case is close to the border line, so close indeed that it is expedient to consider with care former decisions which have been cited for relator. First among them are Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 Am. St. 564, and Dunn v. Reeves Coal Yards Co. Inc. 150 Minn. 282, 184 N. W. 1027. In each, while the person held to be an employe was using his own motive power and conveyance, he was more or less steadily employed by the defendant held responsible as an employer. With respect to every detail worth mentioning, the work was under the constant control of the employer. The employe would take a load now here and now there as directed. The size of each load was controlled by the employer. The workman was not at liberty to depart from the work on any mission personal to himself. In no proper sense was he doing the work "according to his own methods," without subjection to control otherwise than as to the result of the work. In Aarnes v. G. N. Ry. Co. 129 Minn. 467, 152 N. W. 866, a building contract had so many "unusual provisions * * * inserted with the distinct purpose of retaining in the defendant the supervision and control of the work in every respect" as to make an employe of the contractor.

Coming to our more recent compensation cases, we find in Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134, the element of control distinctly present. The hauling of tile there involved had to be co-ordinated with the work of digging the sewers. To that end the employer supervised the operation closely, directing not only what tile should be hauled and where delivered but also the manner of loading it on the wagons. In Schullo v. Village of Nashwauk, 166 Minn. 186, 207 N. W. 621, the work, garbage hauling, was "done under the immediate and actual supervision of the street commissioner." In Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313, the employe was under no obligation to dig a well which would produce water. His only undertaking was to operate his drilling outfit on the premises of his employers until

they told him to stop, which they could have done at any time. In that case there was little actual control but the right to exercise it was present.

Finally, we have the gravel hauling cases, Benson v. County of Marshall, 163 Minn. 309, 204 N. W. 40; and Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327. In the Benson case the county had foremen in charge of the pits and checkers who directed where the gravel should be deposited on the highways. The whole work "was performed under the supervision and direction of the county highway engineer." Again, in the Rouse case, we have present not only the similar and plenary right of control but also a very considerable degree of actual control. A boss and checker were in constant supervision and the gravel had to be deposited wherever the engineer or superintendent in charge directed.

Whether supervision or control was actually exercised is important but not nearly so much so as whether the right of control existed under the contract as made. It is immaterial that the parties might have contracted for supervision and control if in fact they did not do so. Here there is nothing, in the contract, suggesting any right in respondents to control or even supervise relator as to the manner of accomplishing the desired result, that of getting camp supplies to Arlberg. In Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421, the right of control was emphasized as the thing which made for a contract of employment, while in Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635, its absence led to a decision of independent contract.

In the Rouse case, mention is made of that portion of § 4290, G. S. 1923, referring to "piece work" and preventing a relationship otherwise that of employment from becoming one of independent contract simply because "the system of employment used merely provides a method of fixing the workman's wages." Section 4326 was also considered. It defines as an employer "every person not excluded by section 8, who employs another to perform a service for hire and to whom the 'employer' directly pays wages." "Piece work" must be considered as referring to the common practice of having articles of manufacture fabricated by workmen at a stated price

per article. Wages and hire are terms of such elastic meaning that to get their effect both context and purpose must be considered. A householder hires a drayman to haul trunks or furniture and may consider that his pay is the wage of a workman. But here the terms are used in a narrower sense. They cannot bring within the operation of the act any relationship normally that of independent contract rather than of employer and employe. Section 4290 in effect so provides. While the purpose of the law is remedial and it is not only expedient but highly just to give it a broad rather than a narrow scope, there are still limits beyond which it cannot be carried by judicial interpretation. We deny it effect on this case because it is one of independent contract and expressly excluded by § 4290.

Many cases have been cited from other jurisdictions. We cannot discuss them in detail. They differ in applying the rule but agree that decision is governed by the presence or absence of the right of control. "It is not the fact of actual interference with the control, but the right to interfere, that distinguishes an independent contractor from a servant or agent." Tuttle v. Embury-Martin Lbr. Co. 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664. See also note, 20 A. L. R. 684.

Order affirmed.