JOHN B. ROBERTSON v. T. A. OLSON AND ANOTHER.[1]

September 19, 1930.

No. 27,995.

[1]Reported in 232 N. W. 43.

*Orr, Stark, Kidder & Freeman,* for appellant.
*Briggs, Weyl & Briggs,* for respondent.

Loring, C.

The trial court directed a verdict for the defendant the Chamberlin Metal Weather Strip Company, hereinafter for convenience called the company, and from an order denying a new trial the plaintiff appealed. The sole question raised is the correctness of the court's action in so directing a verdict. A verdict was found against the defendant T. A. Olson, and no appeal has been taken by him.

The action was brought to recover for personal injuries occasioned by being struck by a Ford coupé driven by Olson.

The question presented by the appeal is whether Olson was an employe of the company or an independent contractor at the time the injuries were inflicted.

For three years and two months Olson had been engaged in installing weather-stripping for the company. During the last two years he had worked continuously except for absences of about 30 days in the aggregate obtained at his request. He was one of 38 mechanics so engaged. Habitually he went to his work about seven o'clock in the morning and worked until after five o'clock in the afternoon. His hours however had to be arranged to suit the convenience of the householders where he did the work. He was paid by the foot of stripping installed, except in the case of very old buildings, where he was paid by the hour. He was also paid for hauling in his own car the material which he might take from the place of business of the company to any job upon which he was about to work. This hauling of material was optional but frequent and was paid for at about the rates charged by express or transfer companies. He would also without additional compensation return by means of his coupé the surplus material after the completion of a job of weather-stripping. His special tools were

furnished by the company, and he furnished a kit of ordinary carpenter's tools, all of which he habitually transported in his car.

On the day he struck the plaintiff he was driving from his home to the company's office for the purpose of returning material left over from other jobs and to get material and instructions for the job upon which he was about to commence. This trip to the office for the purposes mentioned was according to previous arrangement with the company's foreman.

The question of Olson's negligence is not involved here but solely the liability of the company therefor. The trial court took the view that Olson at the time of the collision with plaintiff was not an employe of the company and hence directed a verdict in its behalf.

Was Olson the company's employe at the time of the accident, and was he acting within the course of his employment?

Usually the right to control is considered to be the test as to whether a person charged with negligence is an employe or independent contractor. By this is meant "the control which the law sees when one person performs services for another." Elliason v. Western C. & C. Co. 162 Minn. 213, 216, 202 N. W. 485, 487.

Was Olson under the control of the company at the time of the accident? The respondent cites Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W. 485; Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49; Bloom v. Krueger, 182 Wis. 29, 195 N. W. 851; and Nussbaum v. Traung L. & L. Co. 46 Cal. App. 561, 189 P. 728, in support of a negative answer to this question.

In the Elliason case, 162 Minn. 213, 202 N. W. 485, the driver of the offending coal truck was the son of its owner, who had engaged to haul coal for the defendant company at a price per ton. On the day previous to his collision with Elliason he had delivered coal, and, finishing his work at a late hour, took home the money collected for the coal and some delivery slips. He had been told by the defendant to report every morning for coal orders and was on his way to the yard for that purpose when he negligently injured Elliason. The court held that the relation of employer and employe existed and that defendant was liable. The language quoted from this case by respondent is applicable to a state of facts where the

employe was merely traveling to his place of employment and has no application to a situation where at the time of the accident he is performing some duty for his employer.

In the Moore case, 171 Minn. 15, 213 N. W. 49, where this court held the driver to be an independent contractor, he was engaged in toting supplies to a camp at a price per load. There was nothing in his contract suggesting either a right to control or supervise the manner of getting the supplies to camp. In commenting on such cases as Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 A. S. R. 564, where an employe was hauling coal by the ton and left a coal hole open, and Dunn v. Reeves C. Y. Co. Inc. 150 Minn. 282, 184 N. W. 1027, also a coal truck case, this court, in the Moore case, speaking through Justice Stone, said [171 Minn. 17]:

"In each, while the person held to be an employe was using his own motive power and conveyance, he was more or less steadily employed by the defendant held responsible as an employer. With respect to every detail worth mentioning, the work was under the constant control of the employer. The employe would take a load now here and now there as directed. The size of each load was controlled by the employer. The workman was not at liberty to depart from the work on any mission personal to himself. In no proper sense was he doing the work 'according to his own methods,' without subjection to control otherwise than as to the result of the work."

In this, a compensation case, Moore made only occasional trips at a price per load. The owners of the freight merely designated the place of loading and unloading without exerting or having any further control of method.

In the Bloom case, 182 Wis. 29, 195 N. W. 851, an employe merely borrowed a truck to go home to lunch. In the California case, 46 Cal. App. 561, 189 P. 728, the salesman was using the company's car for his convenience in going to his office and was serving no company purpose in so doing.

In the Elliason case this court outlined the tests to be applied in such cases and said [162 Minn. 215]:

"The doctrine of respondeat superior rests in part at least upon the power of the master to select, control and dismiss his servants. In determining whether the defendant is liable, proper inquiries are: What was the tortfeasor employed to do? Was he doing something within the range of the contract of hiring? Who owned the instrumentality by means of which the tort was committed? If it did not belong to the defendant, was the tortfeasor's use of it expressly or impliedly authorized? Was he on or off duty at the time and place of the injury to plaintiff? These are matters of probative significance. Their significance may be so clear as to warrant the court in holding that as a matter of law the rule of respondeat superior is or is not applicable, but, if more than one inference may fairly be drawn from the facts, or if there is a conflict of testimony regarding the facts, then the question should be submitted to the jury. If the relation of master and servant exists between the defendant and the tortfeasor, the test of responsibility is usually stated thus: Was the servant acting in the course and within the scope of his employment when the tort was committed, or was he at liberty from the service and pursuing his own ends exclusively?"

In the case at bar Olson had been continuously and exclusively employed by the company for a long period. He frequently, though not always, conveyed the material he was about to install to the place of work. This was in furtherance of the company's interest, as was his transportation of his tools and those of the company and the return of unused material. The fact that his compensation was measured by the foot instead of by units of time did not under the circumstances make him an independent contractor.

If he had been paid a monthly or daily wage and had been furnished a company car for transportation of tools and material, would the company's control of his methods have been any greater? He was not merely going from his residence to his place of employment. He was following instructions given him the day before in going to the office for material and for the work sheet, and was taking not only his tools but material from previous jobs which a

jury might well find he had the intent of returning to the company as it was his duty to do.

While there is a zone where the distinction between employe and independent contractor is not always clear, we think that reasonable minds would not necessarily conclude that Olson was an independent contractor but might differ as to his status, and that a jury would be justified in finding that he was an employe and that the accident occurred in the course of his employment. All the circumstances of this case and the legitimate inferences to be drawn therefrom make it a case for a jury within the rules laid down in the Elliason case, 162 Minn. 213, 202 N. W. 485, which this court deems to be controlling here.

Reversed and a new trial ordered.

