## CRAIGE v. AUSTIN POWDER CO.
### No. 4183.

Circuit Court of Appeals, Fourth Circuit.
Aug. 6, 1937.

Thornton G. Berry, Jr., and D. J. F. Strother, both of Welch, W. Va., for appellant.

Graham Sale, of Welch, W. Va. (Sale, St. Clair & Sale, of Welch, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

A. W. Craige, the plaintiff in the District Court, was seriously injured in a collision between an automobile sedan which he was driving, and an automobile truck which he alleged was being operated by agents and employees of the Austin Powder Company, the defendant. The evidence showed that at the time of the accident the truck was actually being driven by Virgil Mills, an employee of Kern Caudill, who owned the truck, and the District Judge being of the opinion that the powder company had no liability under the circumstances, directed a verdict in its favor. The question to be decided is whether under the view of the facts most favorable to the plaintiff, such a relationship existed between the truck driver and the powder company as to make it responsible for his negligence.

The powder company, which seems to have had headquarters at Cleveland, Ohio, sold explosives throughout the coal fields of Southern West Virginia, and for this purpose maintained a storage warehouse for its goods at Williamson, W. Va. It employed a salesman resident in the town and rented for him office space in the establishment of the Caudill Transfer Company, under which name Caudill conducted a transfer business. The powder company used the same telephone as the transfer company and distributed calendars in the area bearing the name of its sales representative and stating that the transfer company made its local deliveries. The arrangement for the delivery of the goods was that Caudill should make deliveries to the trade supplied by the powder company from its Williamson warehouse and should be paid for his services at a specified rate per hundredweight per mile, as set out in a written schedule. Caudill owned and controlled the trucks used in the delivery; paid for repairs to the vehicles and for the gas and oil consumed; hired and paid the drivers; assigned them to particular trucks on particular jobs; directed their actions and regulated their hours of work. The powder company exercised no control over the deliveries or the actions of the drivers, but merely designated through its sales representative the goods to be delivered and the persons to whom delivery should be made. Caudill also made deliveries for two merchants dealing in meats and meat products, and when requested, would transfer merchandise for other people, although he did not advertise for business generally and had not complied with the statutory regulations governing persons engaged in the general transfer business within the state.

In addition there was evidence, which the plaintiff particularly emphasizes, showing that in the absence from the office of the local salesman of the powder company, telephone calls for him were received by Caudill; that in the absence from the warehouse of the employees of the powder company, Caudill himself secured the goods which he had been instructed to deliver to customers; and that the local salesman customarily instructed Caudill either at the office or over

the telephone when and where to deliver the explosives. Upon all of the facts recited, the plaintiff contends that since the powder company was engaged in the business of selling explosives, and delivery of the goods was a part of the business, and since it had arranged with Caudill to make the deliveries for pay, it had the power to direct and control him in the performance of the work and through him to direct and control the driver of the truck; in short, that Caudill was its employee and servant in charge of the truck driver as a subordinate employee and servant. Hence it is said that the doctrine of respondeat superior should be applied and the powder company should be held liable in damages for the accident in this case. This argument is not without some support in the authorities, particularly in Minnesota where it has been held under somewhat similar circumstances that when a truck owner is engaged by a merchant to make regular deliveries at an agreed rate and in doing so causes injury to a third person by the negligent operation of the truck, it is at least a question of fact for the jury to decide whether he was an independent contractor or the servant of the dealer. Waters v. Pioneer Fuel Co., 52 Minn. 474, 55 N.W. 52, 38 Am.St.Rep. 564; Dunn v. Reeves Coal Yards Co., 150 Minn. 282, 184 N.W. 1027; Elliason v. Western Coal & Coke Co., 162 Minn. 213, 202 N.W. 485; compare Moore v. Kileen & Gillis, 171 Minn. 15, 213 N.W. 49.

But according to the weight of controlling authority in such cases, the question whether a negligent servant is the servant of the defendant in the suit for personal injuries or the servant of his immediate employer as an independent contractor is usually answered by ascertaining who had the power to control and direct him in the performance of his work. Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 222, 29 S.Ct. 252, 53 L.Ed. 480; Restatement of Law of Agency, § 220. We find nothing in the facts in the instant case to justify the conclusion that the driver of the truck involved in the accident was subject to the control or the right of control of the powder company with respect to his conduct in the performance of his duties. On the contrary, it is clear that he was employed and paid by Caudill and was subject only to his direction and control in the course of his independent transfer business, and that the powder company had no greater control over the actions of the drivers in the delivery of explosives for it, than it had over their actions in the delivery of meats for the other regular customers of Caudill.

The conclusion reached is supported by like decisions in many cases, e. g., Texas Co. v. Brice (C.C.A.) 26 F.(2d) 164; Hood v. Azrael, 167 Md. 641, 175 A. 666; Peer v. Babcock, 230 N.Y. 106, 129 N.E. 224; Norton v. Day Coal Co., 192 Iowa, 160, 180 N. W. 905; P. F. Collier & Son Distributing Corp. v. Drinkwater (C.C.A.) 81 F.(2d) 200. Compare our decision in H. E. Wolfe Const. Co. v. Fersner, 58 F.(2d) 27, in which we held that a construction company was not relieved from liability for negligence of a truck driver provided by a subcontractor because the company directed and controlled the hauling, loading, and unloading of the trucks.

Affirmed.