# FLOYD WICKLUND v. NORTH STAR TIMBER COMPANY.[1]

July 14, 1939.

No. 31,984.

[1]Reported in 287 N. W. 7.

596

*H. G. Gearhart* and *Hunt & Palmer,* for appellant.
*Holmes, Mayall, Reavill & Neimeyer,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover for the demolition of his truck while it was being operated by his driver hauling logs under contract with the defendant timber company. The action was brought against both the timber company and its alleged servant Ashlock; but, since the action was dismissed as to Ashlock, we shall refer to the company as the defendant.

Recovery was sought on the theory that defendant is liable under the doctrine of *respondeat superior.* No personal negligence is charged against defendant. The hauling was done exclusively on defendant's privately owned haul-roads on which there was a hill where the collision occurred. Plaintiff's allegations and proofs were that Ashlock was hired by defendant to haul logs and that in the performance of his work he negligently permitted a sleigh loaded with logs to get away from him, run down the hill, and collide with plaintiff's truck at the bottom thereof, thereby completely demolishing it.

The answer was that Ashlock was employed by defendant as an independent contractor, and that, if he was not an independent contractor, he was a fellow servant of plaintiff. It further alleged that plaintiff's driver was guilty of contributory negligence.

Both plaintiff and Ashlock were employed by defendant under identical written contracts, each of which described plaintiff and Ashlock as the "contractor" and provided, among other things, that the contractor would go to defendant's location within 24 hours after receiving notice, undertake to haul pulpwood therefrom "where designated by the company's representative" and continue such hauling therefrom until all the pulpwood was hauled; that he would do all necessary work in coupling sleighs to his truck, haul the sleighloads of pulpwood on the company's haul-roads and spot them on the company's dock "as directed" at Whyte Landing; that the contractor would furnish his own lumber chain and binder device and himself adjust it to his loads; "that he will himself work and will operate his trucks at a minimum of twenty hours per day throughout the hauling season if required by the company"; that he would obtain his gasoline at 18 cents per gallon, his anti-freeze, grease, and repairs from the company; that in case of a tie-up of the roads he would furnish his truck for snowplowing at $1.50 per hour; that he would pay one dollar per day for board and one dollar per month for medical fee and agree to a deduction of ten cents per cord if he quit his job before the end of the hauling season.

The company agreed to pay a stipulated compensation per cord for the hauling and maintain its haul-roads in good hauling condition. The contract contained a clause as follows:

"In the carrying out of the above work it is fully understood that the contractor shall work under the direction of the company's foreman, and that he shall haul from the various loading points when directed to do so by that foreman."

The parties operated under an agreement with a labor union, which embodied many of the provisions just stated and which also provided that the employe would not remove his truck from the company's premises for any period no matter how short "until he first advises the company and gives reasonable explanation for his departure," and that he will have his truck covered with property damage and public liability insurance of $5,000 and $10,000, respectively, as a minimum.

Plaintiff was offshift and sleeping in defendant's bunkhouse when the collision occurred. His driver, Erickson, was in charge of the truck at the time of the collision as his substitute.

There was no dispute as to the fact of employment of both plaintiff and Ashlock by defendant, but there was a very decided conflict as to its nature. Whether Ashlock was employed as an independent contractor was submitted to the jury in the following language:

"An independent contractor is one who, exercising an independent employment or occupation, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. He represents the will of his employer only as to the result of his work and not as to the means by which it is accomplished. The fact that the employer has the right to supervise the work to see that it conforms to the contract does not affect the independence of the relation. The contract is not conclusive as to the relation of the parties, if, notwithstanding the contract, the employer assumes control of the work. The test is whether, with reference to the matter out of which the alleged wrong sprung, the person sought to be charged had the right under the contract of employment, to control in the given particular complained of, the action of the person doing the wrong. That is, did the defendant, North Star Timber Company, have the right of control over Ashlock at the time that he committed the negligence complained of?"

The jury was instructed to return a verdict in favor of defendant if it found that Ashlock was an independent contractor, but if it found in the negative to decide the case on the issues of negligence and contributory negligence. There was a verdict in favor of plaintiff.

Defendant contends that the evidence conclusively shows (1) that Ashlock was an independent contractor, for whose negligence it is not responsible; and (2) that, if he was not an independent contractor, he was a fellow servant of plaintiff, in consequence of which defendant is not liable under the fellow servant rule. The case was

submitted upon the assumption that the workmen's compensation act applies only to personal injuries and not to property damage, see 1 Mason Minn. St. 1927, § 4261, and London G. & A. Co. v. Industrial Comm. 80 Col. 162, 249 P. 642, and that plaintiff's right of recovery, if any, is to be determined by common-law principles. Nor is any claim made that defendant is liable under the safety responsibility act, 3 Mason Minn. St. 1938 Supp. §§ 2720-101 to 2720-122, which by the terms of § 2720-104 applies only to operation of a motor vehicle on a public highway.

■ Although the parties state that their dispute relates not to the test to be applied in determining the relationship of the parties, but to the application of the test, it is not easy to define who is a servant and who is an independent contractor. The test of the relationship is right of control. The rule generally stated is that a servant is a person employed to perform service for another subject to the employer's right of control with respect to his physical conduct or the details in the performance of the service. An independent contractor is one who undertakes to do a specific piece of work without submitting himself to the control of the contractee as to the details of the work, or renders service in the course of an independent employment, representing the contractee only as to the result of the work and not the means by which it is accomplished. Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 A. S. R. 564.

The instructions embodied the rule as stated. The only question is whether under the contracts of employment there was such right of control in defendant as to show that the relationship was that of master and servant, or such lack of it as to show that Ashlock was an independent contractor. The contract contained provisions for complete control, by enumerating certain details and a general clause to comprehend those details not specifically enumerated. The employe did not undertake to do any specific piece of work, but only to render service as directed by defendant. The employer reserved the right to control and determine when the hauling was to commence,—that is, where it so ordered. It controlled the details of the hauling. It loaded the sleds where the timber was cut. The

haulers were required to haul the sleds by attaching them to their trucks. They had nothing to say as to the means of conveyance, the loading, and size of loads. Defendant controlled the routes over which the hauling was to be done by specifying that all hauling was to be done over its haul-roads. Furthermore, there was a clause requiring the haulers to return empty sleds over the roads for reloading. Defendant had the right to determine the exact place of unloading, which was to be done under its direction. Unlike independent contractors, the haulers were required to work personally. Defendant specified the length of time in the working day. The contract stipulated that the defendant was to have not only all the foregoing detailed control, but that all the work was to be done "under the direction of the company's foreman."

He was not employed to work for any definite period of time, and either party could have terminated the contract without becoming liable for breach of contract. The contract provided for such a contingency by allowing defendant a deduction of ten cents per cord on timber hauled in the event Ashlock terminated his employment before the end of the hauling season. So far as defendant was concerned, it had the power to discharge absolutely. Ashlock was an employe and not an independent contractor.

The finding that Ashlock was not an independent contractor is supported, if not compelled, by the evidence. In Waters v. Pioneer Fuel Co. *supra,* we held that evidence that an employe was hired with his team and the running gear of his wagon to deliver coal in box furnished by the employer as directed at a stipulated compensation per ton and to collect, when directed, the price of coal delivered, sustained a finding by verdict that employe was a servant and not an independent contractor. Decision was placed upon the employer's right to direct and control the employe in the performance of the work.

That case has been followed in cases involving the hiring of a driver and team of horses in Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134, and the hiring of a driver and automobile truck in Dunn v. Reeves Coal Yards Co. Inc. 150 Minn. 282, 184 N. W. 1027; Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W.

485; and Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004. In the Dunn case the employe was hired to deliver coal at an agreed amount per ton to the employer's customers as it made sales, and sometimes he collected for coal sold C. O. D. Defendant's employes assisted the trucker in loading coal at the yards and unloading at the place of delivery. The Elliason case in its facts is substantially the same as the Dunn case. In the Angell case two partners were hired under a written contract under which they were employed as "agent and salesman" at a named city. They were required to unload the employer's products, sell them for cash at prices fixed by it, place the proceeds in a bank, report all sales, and remit the proceeds thereof at specified intervals. The employes were required to furnish their own teams, trucks, drivers, and labor to unload and deliver merchandise shipped, carry insurance on the trucks or workmen's compensation insurance on their employes, and furnish a bond for the faithful performance of the contract. The employer owned the oil station and all the equipment used for the business, except the chassis of two trucks and some office furniture owned by the employes, and paid the taxes, insurance premiums, freight charges, and water rates, and furnished light and heat. The employes were paid a commission on merchandise sold by them. Except as provided in the contract, they were free to discharge their duties in their own way. The contract did not contain a provision giving the employer a right of general control as does the one here involved. We said [169 Minn. 187]:

"As we read the contract, Angell & Ness were bound to use the means to accomplish their work which the oil company required them to use. They submitted themselves to the company's control in certain details of the work. They did not undertake to do a specific piece of work for the company. We hold that they were not independent contractors but employes."

In Warner v. Fullerton-Powell Hardwood Lbr. Co. 231 Mich. 328, 204 N. W. 107, cited with approval in Schullo v. Village of Nashwauk, 166 Minn. 186, 207 N. W. 621, a farmer employed to haul logs with his own team at a designated price per 1,000 feet, no

term of employment nor quantity of timber being specified, was held to be an employe and not an independent contractor. In that case the contract was much like that in the instant case, except that the employe was not required to haul on the employer's logging road. See Carlton County Farmers Mut. F. Ins. Co. v. Foley Brothers, 117 Minn. 59, 134 N. W. 309, 38 L.R.A. (N.S.) 175, and Aarnes v. G. N. Ry. Co. 129 Minn. 467, 152 N. W. 866.

By the contract defendant retained the right of control in specific particulars as in Angell v. White Eagle O. & R. Co. *supra,* and, in addition, a general right of control relating not to a specified result by performance of the contract, but to the details and means of such performance. Ashlock was not employed to do a specified piece of work according to his own methods, but to render a continuous service under defendant's control as to all details.

We do not regard Vosbeck v. Kellogg, 78 Minn. 176, 180, 80 N. W. 957, 958, as authority to the contrary, but only as an application of the principles stated to a different set of facts. There a firm was employed to install telephone lines under contract "under the supervision and subject to the approval" of the employer. This language was construed to give the employer, as we said, "the right to supervise as to results,—not merely as to the final result obtained when the work is completed, but also as to the immediate results obtained from time to time as the work progressed. It was not intended by the contract to give the telephone company the right to dictate the means by which these intermediate results should be obtained." Hence the employer was held to be an independent contractor. But here the contract gave defendant such right of control as to details of performance in specific and general terms.

Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49, is not in point. In that case the employe, using his own motor truck and engaged in the business of a private carrier, hauled merchandise occasionally for the employer at a stated price per load, his loading and unloading points being designated by the employer, who had no right to control him otherwise. We said [171 Minn. 16]: "We conclude that relator was an independent contractor because his undertaking was to do the work not in any manner to be dictated

by respondents, but according to his own methods." Here of course the employer had the right of control lacking in the Moore case.

It is to be remembered that the workmen's compensation law defines an employe for the purposes of the act. State ex rel. D. M. Gilmore Co. v. District Court, 147 Minn. 12, 179 N. W. 216. See Herron v. Coolsaet Bros. and Angell v. White Eagle O. & R. Co. *supra*.

The finding that Ashlock was not an independent contractor is sustained by the evidence.

■ The contract clearly contemplated that those employed by defendant should employ substitute servants to drive the trucks, since it is absurd and unreasonable to believe that the parties intended that the truck owners themselves should work at least 20 hours per day. A substitute employed by a servant with the master's consent becomes the master's servant and is bound by the terms and conditions of the regular servant's employment even though the substitute is to receive no compensation from the master and the regular servant continues to receive his own regular wages. 39 C. J. p. 38, § 9; 18 R. C. L. p. 577, § 83; notes, 4 Ann. Cas. 444; Ann. Cas. 1913C, 792.

Although plaintiff's substitute driver, Erickson, was his general servant, there was nothing to prevent his becoming defendant's servant while actually engaged in driving the truck in its service. In Higgins v. Western Union Tel. Co. 156 N. Y. 75, 78, 50 N. E. 500, 501, 66 A. S. R. 537, the court said: "Servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction, and that, too, when their general employer is interested in the work."

Whether the substitute became defendant's servant depended on whether it had the right of control over him in the performance of the work. In Rourke v. White Moss Colliery Co. L. R. [2 C. P. D.] 205, a company furnished to a contractor an engine, equipment, and engineer to operate the same in sinking a shaft for it. The engineer was under the contractor's control. Plaintiff was injured through the engineer's negligence. The court held the engineer in doing the work was the contractor's and not company's servant

upon the ground that he was then under the contractor's control. Lord Cockburn, C. J., in language which has been much quoted, said [L. R. (2 C. P. D.) 209]:

"It appears to me that the defendants put the engine and this man Lawrence at Whittle's disposal just as much as if they had lent both to him. But when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

The principle is applied where a driver and a team or automobile are let or loaned to do hauling, in which case the driver becomes the servant of the one to whom he is let or loaned if the latter has a right to control him in performing the work. Modrinich v. Loyal Order of Moose No. 1117, 178 Minn. 382, 227 N. W. 207 (loan of a driver and truck); Philadelphia & R. C. & I. Co. v. Barrie (8 Cir.) 179 F. 50; Cain v. Hugh Nawn (Mann) Contr. Co. 202 Mass. 237, 88 N. E. 842; Brown v. Smith & Kelly, 86 Ga. 274, 12 S. E. 411, 22 A. S. R. 456; Gorney v. City of New York, 102 App. Div. 259, 92 N. Y. S. 451; Silverman v. City of New York, 114 N. Y. S. 59; 39 C. J. p. 558, § 669; 5 Am. Jur., Automobiles, §§ 373-375, 384. In Cain's case, *supra,* the driver was employed by one Woodbury, who let him and a team to hire to defendant, which was found to be with the right of control. The court said that if the jury found that there was such a hiring with a right of control [202 Mass. 239] "then Woodbury correspondingly had relinquished any right to command his [the driver's] movements while thus engaged, and a further inference, that in the matter of transportation he acted solely as the defendant's servant, would have been warranted."

It seems quite clear that defendant had the right to control plaintiff's substitute under the contract. Its provisions gave defendant the right of control while the truck was employed in its service. Erickson was defendant's servant at the time of the collision.

■ Defendant's control of plaintiff's substitute driver carried with it control of his use of the truck while he performed its work.

Whether the right of control of the truck was in the defendant or the driver does not matter. The important thing is that the right of control had passed from plaintiff. Where the owner of a chattel delivers it to another to perform work in respect to or by means of it, the relationship of the parties is that of bailor and bailee where the owner parts with control over it, and is that of master and servant where he retains control thereof. 6 Am. Jur., Bailments, §§ 58 and 300; 6 C. J. p. 1099, § 13; McColligan v. Penn. R. Co. 214 Pa. 229, 63 A. 792, 6 L.R.A.(N.S.) 544, 112 A. S. R. 739; Spelman v. Delano, 177 Mo. App. 28, 163 S. W. 300; Osborn v. Cline, 263 N. Y. 434, 189 N. E. 483; Mercola v. Western Union Tel. Co. 221 Ill. App. 153. It makes no difference that the bailee at other times and for other purposes is the servant of the bailor. Johnson v. H. M. Bullard Co. 95 Conn. 251, 111 A. 70, 12 A. L. R. 766. Plaintiff was the bailor of the truck at the time of the collision.

■ Plaintiff may hold defendant liable for the damage to his truck. A bailor although out of possession may sue for injuries to his reversionary interest in his property held under bailment. Travelers Ind. Co. v. Fawkes, 120 Minn. 353, 139 N. W. 703, 45 L.R.A.(N.S.) 331 (insurer of bailor suing under its rights of subrogation); The W. C. Block (2 Cir.) 71 F. (2d) 682; Hinderer v. Fehnel, 29 Pa. D. & C. 31; Spelman v. Delano and Osborn v. Cline, *supra.* See Kelly v. Kremer Motor Co. 177 Minn. 515, 225 N. W. 425. If the substitute servant be regarded as the bailee, the defendant and Ashlock were third parties to the bailment. A bailor free from personal negligence, as here, may recover against a third party for injury to the chattel bailed. Palmer v. Mayo, 80 Conn. 353, 68 A. 369, 15 L.R.A.(N.S.) 428, 125 A. S. R. 123, 12 Ann. Cas. 691; Bresnick v. Heath, 292 Mass. 293, 198 N. E. 175; 6 Am. Jur., Bailments, § 349, note 9. In this view defendant would be liable for Ashlock's negligence under the doctrine of *respondeat superior.*

If defendant be regarded as the bailee, it would be liable upon the same grounds. A bailee is liable to the bailor for injuries to the property bailed caused by his servants. Sinclair v. Pearson, 7 N. H. 219; Jones v. Glass, 35 N. C. 305; 6 Am. Jur., Bailments, § 265, note 15.

■ The fellow servant doctrine applies only where there is a common master and a common employment. Identity of employer and employment might be found as to Erickson, plaintiff's substitute, and Ashlock, Ann. Cas. 1913C, *supra,* at p. 796; Pioneer Fire-Proofing Co. v. Clifford, 125 Ill. App. 352; Cunningham v. Syracuse Imp. Co. 20 App. Div. 171, 46 N. Y. S. 954, but not as to plaintiff and Ashlock for the reasons that Erickson, not plaintiff, was defendant's servant at the time under the rule of the authorities *supra,* and plaintiff, being off duty, asleep in the bunkhouse, was not then engaged in the common employment. Orman v. Salvo (8 Cir.) 117 F. 233. In no view can plaintiff be held to have been Ashlock's fellow servant.

Defendant contends that under the fellow servant doctrine the master is not liable for injuries to the servant's property caused by a fellow servant in the common employment. Without deciding that the rule is as stated, it is sufficient to say that the property did not belong to the servant, but to plaintiff. The servant had the possession at the time only as bailee of plaintiff, or as an employe of defendant as the bailee, if the view be adopted that it was bailee. In any event, as we have pointed out *supra,* defendant would be liable.

Affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.