RAYMOND L. SAYRE v. J. T. JOHNSON, AND/OR MIN-
NEAPOLIS EQUIPMENT COMPANY, AND/OR
NELSON SPREADER-TIE COMPANY.[1]

December 15, 1944.

Nos. 33,844, 33,845.

[1]Reported in 17 N. W. (2d) 76.

*Walter S.* and *Harold R. Lundeen,* for relator Raymond L. Sayre.

*Orell R. Leen,* for relator J. T. Johnson.

*Kelly & Mangan,* for respondents Minneapolis Equipment Company and Hardware Indemnity Insurance Company.

*Edward E. Eder,* for respondent The Nelson Spreader-Tie Company.

MAGNEY, JUSTICE.

*Certiorari* in two cases, one to review a decision of the industrial commission denying compensation as against Minneapolis Equipment Company and The Nelson Spreader-Tie Company (No. 33,844), and the other granting compensation as against J. T. Johnson (No. 33,845).

J. T. Johnson was a manufacturer engaged in the business of die-making and punch presswork. He had been so engaged since 1926, operating his own shop in a building owned by him. He did business on a small scale, and prior to the making of the contract hereinafter referred to he employed only two men. The Nelson Spreader-Tie Company owned the patent right on a so-called spreader-tie. This tie, which is made of strip steel, is used for the purpose of holding together and spreading wooden forms for the construction of concrete walls. The Nelson company sold spreader-ties on orders received, principally to contractors. At no time was it engaged in the manufacture of these ties. This was done by other companies under contract. Prior to the summer of 1941 the ties were manufactured by the Minneapolis Equipment Company, a corporation with practically the same stockholders as The Nelson Spreader-Tie Company.

On July 24, 1941, a written contract was entered into between the Nelson company and Johnson. By this contract, Johnson was

granted a license to manufacture ties for the Nelson company at a price of nine dollars per thousand. The Nelson company was to furnish certain machinery and dies necessary for the manufacture of ties, including the machine which petitioner was tending at the time he was injured. It also agreed to furnish the necessary raw material. Johnson agreed to manufacture these ties in quantities and sizes as ordered by the Nelson company and to deliver them at Johnson's place of business. The license agreement was to continue until December 31, 1941. The contract further provided that "upon satisfactory evidence of performance of Agreement by the Licensee the Agreement can be renewed." After the execution of the contract the parties proceeded under it. No formal renewal was made. There were no changes in the terms of the contract until June 12, 1942, when a reduction in the price of manufactured ties from nine to seven dollars per thousand was agreed upon. At the time of the hearing before the referee the parties were still operating under the contract.

On June 2, 1942, the Nelson company received an order for 55,000 ties from the Walter Butler Company, a contracting firm engaged in the performance of a large contract with the United States government in the state of Idaho. The initial order was increased from time to time so that in the ensuing four months Johnson manufactured for the Nelson company 650,000 ties. The normal requirement of the Nelson company did not exceed 350,000 per year. By agreement, as has been stated, the price was cut to seven dollars per thousand on June 12, 1942, which was shortly after the receipt of the Butler order.

Until the Butler order came along, the Nelson company would order ties manufactured and place them in its warehouse, and from there would deliver as orders came in. The unusually large Butler order soon exhausted the Nelson company stock, and it commenced to ship directly from the Johnson factory. The Nelson company furnished the shipping tags, and most of the work of attaching these to the ties was done by Johnson.

At the time the contract was entered into, Johnson was manufacturing dies and jacks for several parties. The Nelson company did not provide the entire business for Johnson, and Johnson's men were working on machines other than those of the Nelson company. Except for the period covered by the filling of the Butler order, Johnson carried on considerable business, and at the time the contract was made between him and the Nelson company, the taking over of the entire plant and the entire time of all the men in the machine shop was not contemplated.

Robert B. Aslesen, the secretary-treasurer of the Nelson company, visited the Johnson shop several times a week. He gave instructions as to sizes and quantities, examined and inspected the ties that had been manufactured, approving and rejecting as the case might be, and saw to it that Johnson was furnished material. Aslesen did not hire or discharge any of Johnson's employes, nor did he exercise any control over them as to the manner in which they did their work. The Nelson company paid no wages to any employe of Johnson, nor did it report social security or any other withholding tax for any Johnson employe.

Raymond L. Sayre, the employe herein, commenced to work for Johnson two or three months prior to his injury. First, he did general work, then he was put to work on the crimping press making ties. This was one of the machines furnished by the Nelson company. On August 12, 1942, he was injured while working on this machine.

Johnson did not carry workmen's compensation insurance at the time of the making of the contract with the Nelson company, nor until after Sayre was injured. The referee determined that Johnson was a subcontractor of the Nelson company and awarded compensation against both. He dismissed the petition as to the Minneapolis Equipment Company and its insurer, Hardware Indemnity Company. On appeal, the industrial commission held that Johnson was not a subcontractor of the Nelson company, dismissed the proceeding as to the Minneapolis Equipment Company, its insurer,

Hardware Indemnity Company, and the Nelson company, and awarded compensation as against Johnson only.

Sayre contends that the relationship between the Nelson company and Johnson was that of employer and employe, and that as a result of that relationship he was an employe of the Nelson company and not of Johnson, his immediate hirer. As stated, the industrial commission based its decision on the ground that Johnson was not a subcontractor of the Nelson company, holding inapplicable Minn. St. 1941, § 176.30, subd. 4 (Mason St. 1940 Supp. § 4290[4]), which provides that where any subcontractor fails to comply with the provisions of § 176.24 (Mason St. 1927, § 4288), which requires the carrying of compensation insurance, the principal contractor shall be liable for all compensation benefits to employes of all subsequent subcontractors engaged upon the subject matter of the contract and injured on, in, or about the premises.

The commission stated: "it is clear that the contract was a simple one, under which Johnson agreed to manufacture ties which the Nelson company would sell in the course of its business"; in other words, that Johnson was an independent contractor. Since the employe bases his entire contention on the proposition that Johnson was an employe of the Nelson company, it is not necessary to consider whether Johnson was a subcontractor of the Nelson company. It may be said, however, that the evidence fully supports the finding of the commission that Johnson was not a subcontractor of the Nelson company. The question submitted to us for determination is whether Johnson is an employe of the Nelson company or an independent contractor.

In Wicklund v. North Star Timber Co. 205 Minn. 595, 599, 287 N. W. 7, 10, where this court stated the rule which is the test of relationship between employer and employe, it said:

"* * * The test of the relationship is right of control. The rule generally stated is that a servant is a person employed to perform service for another subject to the employer's right of control with respect to his physical conduct or the details in the performance of the service. An independent contractor is one who undertakes to

do a specific piece of work without submitting himself to the control of the contractee as to the details of the work, or renders service in the course of an independent employment, representing the contractee only as to the result of the work and not the means by which it is accomplished. Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 A. S. R. 564."

We had occasion to reiterate this rule and apply it as recently as in the case of· Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285.

We have already detailed the facts in this case. It is not necessary to restate them. From them it is evident that Johnson comes within the definition of an independent contractor as stated in the Wicklund case. He owned his own factory. He had been in business since 1926. He hired and discharged his own employes. He fixed their wages. He manufactured goods for others besides the Nelson company. His men worked on machines other than the Nelson machines. When the contract was entered into, it was not contemplated that the entire plant and the entire time of the men in the machine shop should be devoted to the manufacture of ties. Except when the Butler order was filled, the plant was engaged in considerable other business. Johnson agreed to manufacture articles which the Nelson company would sell in the course of its business. Johnson had undertaken to do a specific piece of work without submitting himself to the control of the contractee as to details of the work. He rendered service in the course of an independent employment, representing the contractee only as to the result of the work and not the manner by which it was accomplished. The relationship between him and the Nelson company was not that of employer and employe.

The disposition of Sayre's claim against the Nelson company makes unnecessary any consideration of his claim against the Minneapolis Equipment Company.

Affirmed.